1  ANDRÈ BIROTTE JR.
   United States Attorney
2  ROBERT E. DUGDALE
   Assistant United States Attorney
3  Chief, Criminal Division
   J. MARK CHILDS (California Bar No.: 162684)
4  Assistant United States Attorney
   Organized Crime Drug Enforcement
5  Task Force Section
        1400 United States Courthouse
6       312 North Spring Street
        Los Angeles, California 90012
7       Telephone:  (213) 894-2433
        Facsimile:  (213) 894-0142
8       Email: mark.childs@usdoj.gov

9  Attorney for Plaintiff
   United States of America

10

11              UNITED STATES DISTRICT COURT

12          FOR THE CENTRAL DISTRICT OF CALIFORNIA

13  UNITED STATES OF AMERICA,        ) No. CR 08-1033-CAS
                                     )
14          Plaintiff,               ) GOVERNMENT'S OPPOSITION TO
                                     ) DEFENDANT ITZHAK ABERGIL'S
15          v.                       ) MOTION FOR DISCOVERY;
                                     ) SUPPORTING MEMORANDUM OF POINTS
16  ITZHAK ABERGIL,                  ) AND AUTHORITIES; DECLARATION OF
                                     ) J. MARK CHILDS
17          Defendant.               )
                                     ) [Exhibits Filed Separately]
18                                   )
                                     ) Date: June 13, 2011
19                                   ) Time: 1:30 p.m.
                                     )
20  _____   )

21      Plaintiff United States of America, by and through its

22  attorneys of record, hereby files its opposition to the motion

23  for discovery filed by defendant Itzhak Abergil ("defendant").

24  For the reasons set forth below, defendant's motion should be

25  denied because the motion is actually a motion for a bill of

26  particulars, the government has complied and will continue to

27  comply with its discovery obligations, and the government has

28

1 | agreed to early disclosure of witness lists and <u>Jencks</u>
2 | statements.  Such early disclosures should be scheduled in order
3 | to maintain the safety of witnesses.  Moreover, the government
4 | will provide defendant, by the time of the hearing on his motion,
5 | with several hundred pages of additional indices that identify
6 | the documents and things that relate to particular sets of
7 | counts.

8 |     This opposition is based on the (1) attached memorandum of
9 | points and authorities, (2) the exhibits filed in support hereof;
10 | (3) the exhibits Filed in Support of Government's Notice of
11 | Motion and Partially Opposed Motion for Order Continuing Trial
12 | and to Exclude Time under 18 U.S.C. § 3161 and Sever Counts filed
13 | on May 16, 2011; (4) the complete files and records in this case,
14 | and (5) such further evidence or argument as the Court may
15 | consider at the hearing on this matter.
16 | Dated: May 18, 2011

17 |               Respectfully submitted,

20 | J. MARK CHILDS
21 | Assistant United States Attorney
    Attorneys for Plaintiff
22 | United States of America

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES......................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES.......................... 1

I.   INTRODUCTION AND SUMMARY................................. 1

II.  PROPOSED SCHEDULE........................................ 3

     A.    Trial on MDMA Trafficking Counts (Counts 7 and 8).... 3

     B.    Trial on RICO Murder Counts (Counts 3 through 6) .... 4

     C.    Trial on RICO Extortion Counts (Counts One, Two,
           Nine to Twelve, and Thirteen to Thirty-Two).......... 4

III. FACTUAL BACKGROUND....................................... 5

     A.    Indictment and Appearances........................... 5

     B.    Extradition.......................................... 6

IV.  RULE 16 NOTICE IS UNNECESSARY............................ 7

V.   DISCLOSURE OF THE GOVERNMENT'S WITNESS LIST SHOULD BE
     ORDERED AS REQUESTED IN THE PROPOSED SCHEDULES........... 9

VI.  THE SUMMARIES OF EVIDENCE AND INDICES OF DISCOVERY
     PRODUCED TO DEFENDANT BELIE DEFENDANT'S CLAIMED NEED
     FOR A LIST OF EXCULPATORY EVIDENCE...................... 13

VIII. THE GOVERNMENT WILL AGREE TO EARLY DISCLOSURE OF
     JENCKS.................................................. 15

IX.  THE GOVERNMENT HAS RECEIVED NO RECIPROCAL DISCOVERY...... 15

X.   DEFENDANT'S MOTION SHOULD BE DENIED ON THE GROUNDS
     THAT IT IS A DISGUISED MOTION FOR A BILL OF PARTICULARS.. 15

XI.  CONCLUSION ............................................. 19

i

**TABLE OF AUTHORITIES**

**FEDERAL CASES**                                                          **PAGE(S)**

Moore v. Illinois,
      408 U.S. 786 (1972)...................................... 9

Raley v. Yist,
      470 F.3d 792 (9th Cir. 2006)........................... 13

Rhoades v. Henry,
      596 F.3d 1170 (9th Cir. 2010)......................... 13

Rovario v. United States,
      353 U.S. 52 (1957)............................... 11, 12

Skilling v. United States,
      U.S. -- 130 S. Ct. 2896, 177 L. Ed. 2d 619,
      2010 WL 2518587 (June 24, 2010)....................... 13

United States v. Alvarez,
      472 F.3d 111 (9th Cir. 1973)........................... 12

United States v. Anderson,
      799 F.2d 1438 (11th Cir. 1986)......................... 18

United States v. Baxter,
      491 F.2d 150 (9th Cir. 1973)........................... 9

United States v. Buffington,
      815 F.2d 1292 (9th Cir. 1987).......................... 12

United States v. Butler,
      822 F.2d 1191 (D.C. Cir. 1987)......................... 18

United States v. Calabrese,
      825 F.2d 1342 (9th Cir. 1987).......................... 18

United States v. DiCesare,
      765 F.2d 890 (9th Cir. 1985)........................... 17

United States v. Drebin,
      557 F.2d 1316 (9th Cir. 1977).......................... 16

United States v. Giese,
      597 F.2d 1170 (9th Cir. 1979)...................... 16, 18

United States v. Henderson,
      241 F.3d 638 (9th Cir. 2001)........................... 12

United States v. Hernandez,
      608 F.2d 741 (9th Cir 1979)............................ 11

ii

**TABLE OF AUTHORITIES**

**FEDERAL CASES**                                                    **PAGE(S)**

United States v. Hsia,
        24 F. Supp. 2d 14 (D.D.C.1998)........................... 13

United States v. Jaramillo-Suarez,
        950 F.2d 1378 (9th Cir. 1991)........................... 12

United States v. Johnson,
        886 F.2d 1120 (9th Cir. 1989)........................... 12

United States v. Mahat,
        106 F.3d 89 (5th Cir. 1997)............................. 14

United States v. Murray,
        297 F.2d 812 (2d Cir. 1962)............................. 16

United States v. Parsons,
        367 F.3d 409 (5th Cir. 2004)............................ 14

United States v. Rosenthal,
        793 F.2d 1214 (11th Cir. 1986).......................... 18

United States v. Ryland,
        806 F.2d 941 (9th Cir. 1987)............................ 17

United States v. Sai Keung Wong,
        886 F.2d 252 (9th Cir. 1989)....................... 11, 12

United States v. Skilling,
        554 F.3d 529............................................ 13

Wong Tai v. United States,
        273 U.S. 77 (1927)...................................... 17

**STATE CASES**

United States v. Salyer,
        2010 WL 3036444 (E.D. Cal. 2010)....................... 14

**FEDERAL STATUTES**

18 U.S.C. § 3161....................................... 2, 20

**FEDERAL RULES**

Fed.R.Crim.P 12(a)(1)(A),(B),(D),(E)......................... 7

iii

# MEMORANDUM OF POINTS AND AUTHORITIES

I.    INTRODUCTION AND SUMMARY

Defendant Itzhak Abergil's ("defendant's") motion for "discovery" is really a motion for a bill of particulars.

Defendant's onerous discovery demands include that the government immediately identify every legal theory of admissibility for every piece of potential evidence or testimony that the government may seek to introduce as proof of any of the thirty-two counts in the indictment.  Also, without identifying any potential defense, defendant demands that the government specifically identify (as oppose to just produce and describe in an index) each document and each audio recording that may potentially aid in the defense of any of the thirty-two counts or that could be used as impeachment material against a witness.

There is no legal justification for defendant's demands because the government has and will continue to comply with its discovery obligations.  See e.g., exhs. 5-34 and 38-41.[1]

Defendant's real complaint is that his defense team has not created an easy roadmap of the discovery.

However, the government produced to defendant hundreds of pages of detailed indices of the discovery and hundreds of pages of detailed summaries of the government's evidence and trial witnesses for each and every count in the indictment.  See e.g., exhs. 19 (indices that relate to MDMA Trafficking Counts and RICO Murder Counts); exhs. 23-25 and 40 (indices of materials from

---

[1] Government's Exhibits 1 to 37 were filed, under seal, in support of Government's Motion and Partially Opposed Motion for Order Continuing Trial on May 16, 2011 and Government's Exhibits 38 to 49 were filed, concurrently, with this Opposition.

1  Belgium that relate, primarily, to the MDMA Trafficking Counts);

2  exh. 30 (a 419 page summary of the discovery in the Vineland Boys

3  ("VB") gang prosecutions that may contain <u>Brady</u> for testifying

4  former VB members) and exh. 26 (index of 50 CD discs of audio

5  recordings).  Moreover, the letters enclosing the discovery to

6  defense counsel often describe the discovery and their relevance

7  to the defendants or charges.  <u>See e.g.</u>, exhs. 9, 11-15, 17-19,

8  23- 25.

9      Other indices include an index of the first 90,000 pages of

10  discovery produced to defendants that relate to the RICO

11  Extortion Counts (index produced as bates no. 145,574-145,589) as

12  well as indices of audio recordings and listings of materials

13  produced by Israel (<u>see</u>, <u>e.g.</u>, Exh. 22).[2]

14      In short, the roadmap of the government's evidence and its

15  presentation of its case-in-chief, in part, is already in the

16  discovery.

17      Nevertheless, by the time of the hearing on defendant's

18  motion, the government will have produced additional indices to

19  defendants that will provide descriptions of the bates stamped

20  discovery materials, including audio recordings, and that will

21  identify the set of counts or overt act to which the discovery

22  materials pertain.

23      Additionally, the government has provided extensive <u>Brady</u>

24  material, including, a listing of benefits and impeachment

25  material about certain identified testifying cooperators.  <u>See</u>

26  exhs. 48 and 49.  Such <u>Brady</u> information will be identified in

27

28  [2] If requested by the Court or defense counsel, these indices
    will be submitted, under seal, to the Court.

the indices provided.  However, for the security of a few certain non-disclosed potential testifying cooperators, the government will provide their identities and their reports of interviews according to the schedule below, except if the reports contain Brady, in which case, they have been or will be produced in discovery.

Defendant's request for a complete list of all witnesses and potential witnesses would be premature and would place, at this time, certain witnesses in peril.  First, the government has not decided on all its trial witnesses and, second, both I. Abergil, who was sentenced to an 18 year term of imprisonment in Israel for murder, and Malul, who was identified by members of the Vineland Boys ("VB") street gang as the man who hired gang members to kill Sami Atias, have been known to engage in violence against those who cross them.  See, e.g., exh. 43 at ¶¶ 3, 11, 15, 96-100, the 318 page declaration of DEA SA Reuter's that summarizes evidence in this case.  Thus, safety concerns require that the identity of certain cooperating witnesses remain undisclosed.

For all of these reasons, as set forth in greater detail, below, the motion for discovery should be denied.  The government requests, respectfully, that the Court set the pre-trial hearings and trial dates in accordance with schedules below.

II.   PROPOSED SCHEDULE

A.   Trial on MDMA Trafficking Counts (Counts 7 and 8)

Trial to commence against Itzhak Abergil ("I. Abergil") and Israel Ozifa ("Ozifa") as follows:

Indices of discovery to defendants: **June 13, 2011**

First disclosure of known witnesses: **July 5, 2011**

Identification of telephone calls for trial (with draft transcripts or detailed summaries), 404(b) evidence, experts and second disclosure of witnesses (previously undisclosed witnesses) and Jencks material: **October 4, 2011**

Defendants' reciprocal discovery due: **October 18, 2011**

Motions Due(including motions in limine): **November 8, 2011.**

Opposition to motions due: **November 23, 2011**

Replies to oppositions due: **November 30, 2011**

Hearings on motions: **December 12, 2011**

Defendants' witness list due: **December 28, 2011**

Trial date: **January 31, 2012**

B.    Trial on RICO Murder Counts (Counts 3 through 6)

Trial to commence against I. Abergil and Malul as follows:

Indices of discovery to defendants: **June 13, 2011**

First disclosure of known witnesses: **November 8, 2011**

Identification of telephone calls for trial(with draft transcripts or detailed summaries), 404(b) evidence, experts and second disclosure of witnesses (previously undisclosed witnesses) and Jencks material: **January 17, 2012**

Defendants' reciprocal discovery due: **February 14, 2012**

Motions Due (including motions in limine): **March 12, 2012.**

Opposition to Motions due and defendant's witness list due: **March 23, 2012**

Replies to Oppositions due: **March 29, 2012**

Hearings on Motions: **April 9, 2012**

Trial Date: **April 24, 2012**

C.    Trial on RICO Extortion Counts (Counts One, Two, Nine to Twelve, and Thirteen to Thirty-Two)

Trial to commence against I. Abergil, M. Abergil and Barashy, only, on RICO conspiracy count (count one) and related extortion (counts two and 9-12) and money laundering counts

4

(counts 13-32), as follows:

Indices of discovery to defendants: **June 13, 2011**

First disclosure of witnesses: **January 10, 2012**

Identification of telephone calls for trial(with draft transcripts or detailed summaries), 404(b) evidence, experts and second disclosure of witnesses (previously undisclosed witnesses) and Jencks material: **May 22, 2012**

Defendants' reciprocal discovery due: **June 1, 2012**

Motions Due (including motions in limine): **June 20, 2012.**

Opposition to Motions Due: **July 3, 2012**

Replies to Oppositions Due and defendants' witness list due: **July 9, 2012**

Hearings on Motions: **July 16, 2012**

Trial Date: **July 31, 2012**

III. FACTUAL BACKGROUND

    A.    Indictment and Appearances

On or about July 23, 2008, a federal grand jury returned an indictment against seven defendants: Itzhak Abergil ("I. Abergil"), Meir Abergil ("M. Abergil"), Sasson Barashy ("Barashy"), Yoram El-Al ("El-Al"), Moshe Malul ("Malul"), Israel Ozifa ("Ozifa"), and Luis Sandoval ("Sandoval"), in this case.

The 32 counts of the Abergil indictment are grouped as follows:

(1) A RICO conspiracy count (count one) and related extortion (counts 2 and 9-12) and money laundering counts (counts 13-32) against I. Abergil, M. Abergil and Barashy, centered mainly on the extortion of three individuals in the United States and two criminal associates (Hai Waknine and Assaf Waknine)(collectively, these counts are referenced as the "RICO Extortion Counts");

5

(2) A separate RICO conspiracy count (count 3) and VICAR murder-related counts (counts 4-6) against I. Abergil, Malul and Sandoval for conspiring to traffic narcotics and murder, and the murder of, an ecstasy[3] dealer, Sami Atias that occurred in and around Encino, California on or about August 31, 2003 (collectively, these counts are referenced as the "RICO Murder Counts"); and

(3) Ecstasy importation and distribution charges in counts seven and eight against I. Abergil and Ozifa based on shipments of ecstasy from Belgium to the United States that occurred in December 2003 that were part of I. Abergil's large international drug trafficking organization that included shipments of narcotics to or from Japan (Overt Acts 53 and 57 in counts 7 and 8), Netherlands (Overt Act 54), Belgium and elsewhere (collectively, counts 7 and 8 are referenced as the "MDMA Trafficking Counts").

B.  Extradition

On or about January 12, 2011, based on the government's extradition request to Israel, I. Abergil, M. Abergil, Barashy, Malul, and Ozifa (collectively, "defendants") were extradited from Israel to the United States.  During two and half years of extradition proceedings in Israel the government produced over 5,000 pages of materials related to the evidence to support the counts in the indictment.  The extradition case in Israel was heated and contentious.  Each defendant had multiple attorneys and thousands of pages of evidence and evidence summaries was

---

[3] "Ecstasy" or "MDMA" is 3,4-methylenedioxymethamphetamine, a schedule I controlled substance.

1 | analyzed and argued by both sides.  The Jerusalem District Court
2 | and the Israeli Supreme Court approved the extradition of the
3 | defendants in a several hundred page order that analyzed, in
4 | detail, the voluminous evidentiary submissions.

5 | On January 13, 2011, the five defendants attended
6 | post-indictment arraignment.  Each defendant was detained.  EL-AL
7 | and Sandoval are fugitives.

8 | IV.   RULE 12(b) NOTICE IS UNNECESSARY

9 | Defendant demands, for the first time, the disclosure of an
10 | itemization of the Rule 16 evidence that the government intends
11 | to use in its case-in-chief.  The government's obligation under
12 | Rule 16 are triggered by a request from defendant.  See
13 | Fed.R.Crim.P 16(a)(1)(A),(B),(D),(E) [government's disclosure
14 | obligations are triggered "[u]pon defendant's request"].
15 | Defendant claims this list, which would be enormously time-
16 | consuming for the government to compile, is required because
17 | defendant has insufficient notice of the Rule 16 materials that
18 | the government may use in its case-in-chief.

19 | However, defendant has been provided with ample notice of
20 | the Rule 16 material that the government may utilize its case-in-
21 | chief.  Key pieces of evidence (including, transcripts of
22 | intercepted calls, declarations from a multitude of key
23 | witnesses, hundreds of reports of interviews, and prior testimony
24 | and exhibits in related cases) have been produced and have been
25 | summarized and identified in, among other places, the extradition
26 | materials.  See, e.g., exhs. 43, 44, 45, 46 and 47 (listings and
27 | summaries of evidence and witness statements against I. Abergil
28 | and other defendants for the RICO Extortion Counts, the RICO

7

1  Murder Counts and the MDMA Trafficking Counts).

2       As for defendant's overbroad request that the government

3  identify the sources of any potential evidence, the sources of

4  the evidence is evident from the discovery material.  (See id.).

5       Defendant will be able to glean from the discovery the

6  evidence against him, if he reads the listings of evidence, the

7  summaries of the evidence and the witness statements already

8  provided in discovery which support the RICO Extortion Counts,

9  the RICO Murder Counts and the MDMA Trafficking Counts it.  See,

10  e.g., Exhibits 43, 44, 45, 46 and 47.

11       One obvious roadmap of the government's evidence is the 318

12  page declaration of DEA SA Reuter's that summarizes evidence for

13  the counts in this case.  See exhs. 43 and 47.  Although the

14  declaration does not contain all evidence against each defendant

15  for each count, it is a very detailed evidentiary roadmap of the

16  specific evidence and witnesses that the government may use

17  against defendant at trial.  See e.g., Exh. 43 at ¶¶ 3, 11, 15,

18  96-100 and exh. 42 [pages 861, 862, 887-895] - listing certain

19  key witnesses and summarizing their detailed statements.

20       Separately, since January 2011 (see exh. 38), the government

21  has produced, and will continue to produce, all evidence required

22  for production under Rule 16.[4]  The discovery contains materials

23  that the government will use in its case-in-chief (including

24  audio recordings).  Production of discovery will be ongoing for

25

26  [4]In addition to wiretap calls, statements of defendants are
   identified in exh. 25 (recordings during defendants' booking at
27  MDMC) and exh. 41 (recordings of defendants during extradition
   flights) as well as recording of jail calls at MDC (produced
28  shortly).

1    several additional months. For instance, in April 2011 and May
2    2011, the government received from Spain and Israel materials
3    that may be used in the government's case-in-chief. Certain of
4    this material was requested from these countries months or, even,
5    years ago by the government. See exh. 27 (p. 351), exh. 29 (pp.
6    362 to 397) and exh. 31. The government is in the process of
7    translating this material into English and selecting certain
8    audio recordings for trial transcripts. Thus, the government, at
9    this moment, cannot identify all the material it will use in its
10   case-in-chief.

11       Finally, defendant's requests are, really, improper
12   interrogatories to the government. The government is aware of no
13   authority for defendant to propound "civil" style interrogatories
14   to the government. Significantly, there is no constitutional
15   requirement for "the prosecution to make a complete accounting to
16   the defense of all evidence in its possession." United States v.
17   Baxter, 491 F.2d 150, 173 (9th Cir. 1973), citing Moore v.
18   Illinois, 408 U.S. 786 (1972).

19   V.   DISCLOSURE OF THE GOVERNMENT'S WITNESS LIST SHOULD BE
         ORDERED AS REQUESTED IN THE PROPOSED SCHEDULES
20
         Defendant's request for an immediate listing of all
21
     witnesses and potential witnesses for all trials is overbroad and
22
     is premature and would place certain witnesses in peril. The
23
     government has not decided on all its trial witnesses. Security
24
     issues exist for potential testifying cooperating witnesses.
25
     Morever, exculpatory material from non-testifying cooperators has
26
     been produced and will continue to be produced.
27
         However, the government's proposed pre-trial and trial
28

                                   9

schedules above provide for the disclosure of the government
witnesses in two phases for each trial.  During the first phase
the government will disclose known witnesses who do not possess
security issues. During the second phase, the government will
identify witnesses previously designated by the government with
security issues and previously unknown or uncertain witnesses.
As with any trial, witnesses may become unavailable and
substitute witnesses (such as for foundational purposes) may be
needed to testify which will result in notice of these witnesses
shortly before trial.  However, under the proposed schedule, the
government will be disclosing almost all of its witnesses several
months in advance of trial.

        The facts and the law support bifurcated witness
disclosures.  I. Abergil, who has a previous conviction in Israel
for murder in which he received a term of imprisonment of 18
years; Malul, who has been identified by members of VB street
gang as the man who hired VB members to kill Sami Atias; and
their worldwide web of criminal associates have been known to
engage in violence against those who cross them.  See, e.g., exh.
43 at ¶¶ 3, 11, 15, 96-100.

        If an informant is going to be called as a witness at trial,
the government must and will comply with its discovery
obligations that attach to any witness, including production of
Jencks statements, impeachment material, and the like.  The
government will produce all Brady material as required by law.
However, such material will be redacted in order to protect
against disclosure of personal identifying information that could
be used to locate the current residence of any witness or the

10

1  names or location of the family members of any witness.

2       Defendant demands the immediate and uncontrolled disclosure

3  of any potential witnesses who may be called by the government.

4  The government has disclosed certain cooperating witnesses who

5  will, in fact, be testifying at trial.  However, the government

6  strongly objects to the production of witness statements or

7  debriefings (not covered by Brady) from those cooperators who,

8  currently, have safety issues or are **non**-testifying cooperators.

9       Generally, information regarding informants not testifying

10 at trial is privileged and thus not subject to discovery.

11 Rovario v. United States, 353 U.S. 52, 59-60 (1957).  The Ninth

12 Circuit has recognized the government's "strong interest in

13 protecting the valuable resources of the informant in . . .

14 investigations."  United States v. Sai Keung Wong, 886 F.2d 252,

15 257 (9th Cir. 1989).  The Ninth Circuit has also recognized that

16 disclosure of information pertaining to informants can place the

17 informants in great physical danger.  See, e.g., United States v.

18 Hernandez, 608 F.2d 741, 745 (9th Cir 1979) ("It is no secret

19 that informers whose identities are disclosed prior to trial are

20 often 'among the missing' when the trial date finally arrives").

21      Because of these strong interests in protecting informants,

22 "[t]he government has a limited privilege to withhold the

23 identity of confidential informants."  Sai Keung Wong, 886 F.2d

24 at 255 (citing Rovario, 353 U.S. at 59).[5]  The Ninth Circuit has

25
26  [5]It is only "[w]here the disclosure of an informer's identity,
    or the contents of his communication, is relevant and helpful to
27  the defense of an accused, or is essential to a fair
    determination of a cause, the privilege must give way."  Rovario,
    353 U.S. at 60-61.  "The burden of proof is on the defendants to
28  show need for the disclosure."  Sai Keung Wong, 886 F.2d at 256

1   recognized that "[t]his privilege serves several important law

2   enforcement objective, including encouraging citizens to supply

3   the government with information concerning crimes." <u>United</u>

4   <u>States v. Henderson</u>, 241 F.3d 638, 645 (9th Cir. 2001) (citations

5   omitted).

6      These concerns have been supported by the reports of former

7   associates of I. Abergil and Malul.  The reports and declarations

8   make clear that I. Abergil and Malul target for death those who

9   cross them.  The risk of danger to testifying and **non**-testifying

10  witnesses is real.  The delay in revealing the identity of a few

11  testifying cooperating witnesses is necessary and reasonable

12  under the proposed schedules.  Separately, no legitimate legal

13  reason exists for defendant or his attorneys to review the

14  debriefing reports of non-testifying witnesses, if that material

15

16  (citing <u>United States v. Buffington</u>, 815 F.2d 1292, 1299 (9th
    Cir. 1987)).  To make the showing required by <u>Rovario</u> before
17  informant information must be produced, a defendant "must show
    more than a 'mere suspicion' that the informant has information
18  which will prove 'relevant and helpful to his defense, or that
    will be essential to a fair trial.'"  <u>Henderson</u>, 241 F.3d at 645
19  (citations omitted); <u>see also</u> <u>United States v. Johnson</u>, 886 F.2d
    1120, 1122 (9th Cir. 1989) (mere suspicion or unsubstantiated
20  general claims are insufficient to require disclosure); <u>Sai Keung</u>
    <u>Wong</u>, 886 F.2d at 255-56 (same).
21
22     Where an informant is not directly involved in the charged
    criminal activities, informant information is generally not
23  relevant, let alone helpful, to a defense.  <u>United States v.</u>
    <u>Alvarez</u>, 472 F.3d 111 (9th Cir. 1973) (defendant not entitled to
24  informant information where there was no showing that informant
    participated in crime); <u>see also</u> <u>Sai Keung Wong</u>, 886 F.2d at 255-
25  56 (noting that degree of involvement by informant important in
    determining whether informant will be relevant to defendant's
26  defense). Moreover, informant information is not necessary where
    the informant is not the only percipient witness to defendant's
27  crime.  <u>United States v. Jaramillo-Suarez</u>, 950 F.2d 1378, 1387
    (9th Cir. 1991) (finding defendant was not entitled to informant
28  information where there was "no evidence to suggest that the
    informant was the only witness to any critical event").

                                    12

1  is not Brady.

2      Based on the foregoing legal principles, the government's
3  bifurcated witness disclosure deadlines adequately balance the
4  defendant's need to prepare for cross-examination with the real
5  safety concerns of certain undisclosed cooperating witnesses.

6  VI.  THE SUMMARIES OF EVIDENCE AND INDICES OF DISCOVERY
       PRODUCED TO DEFENDANT BELIE DEFENDANT'S CLAIMED NEED
7      FOR A LIST OF EXCULPATORY EVIDENCE

8      The Ninth Circuit has clearly stated that "there is no Brady
9  violation when a defendant possessed the information that he
10  claims was withheld." Rhoades v. Henry, 596 F.3d 1170, 1181 (9th
11  Cir. 2010); see Raley v. Yist, 470 F.3d 792, 804 (9th Cir. 2006).
12  The Ninth Circuit determined that a Brady violation is not found
13  for exculpatory or impeaching material that was disclosed, but
14  not identified as favorable to the defense.  Id.  Moreover, case
15  law from other Circuits support that trial courts should not
16  require the government to identify pretrial, even as a matter of
17  case management, materials which are exculpatory or impeaching.
18  See United States v. Skilling, 554 F.3d 529, 576-77 (5th
19  Cir.2009, aff'd in part, rvs'd in part, Skilling v. United
20  States, --- U.S. ----, 130 S.Ct. 2896, 177 L.Ed.2d 619, 2010 WL
21  2518587 (June 24, 2010)). "As a general rule, the government is
22  under no duty to direct a defendant to exculpatory evidence
23  within a larger mass of disclosed evidence." Id. at 576.[6]

24  ─────────────────

25  [6]But see United States v. Hsia, 24 F.Supp.2d 14, 29-30
   (D.D.C.1998) rvs'd in part on other grounds, 176 F.3d 517
26  (D.C.Cir.1999) ("the government cannot meet its Brady obligations
   by providing [the defendant] with access to 600,000 documents and
   then claiming that she should have been able to find the
27  exculpatory information in the haystack"). However, this is not a
   needle in a haystack case because the government has and will
28  provide detail indices of the discovery.

1    Defendant's heavy reliance on a district court's ruling in
2    United States v. Salyer, 2010 WL 3036444 (E.D. Cal. 2010) is
3    misplaced.  In Salyer, the district court stated that the "real
4    problem" in that case was that the government claimed it met its
5    Brady/Giglio obligations "by turning over a mountain of
6    'everything' acquired over half a decade, and telling defense
7    counsel nothing about where exculpatory/impeaching information
8    can be found."  Id. at *6.  Here, the government, in contrast to
9    the Salyer case, has provided and will provide several detailed
10   indices that identify how the material relates to counts or overt
11   acts or witnesses that will serve as a roadmap the mountain.

12   Additionally, unlike Salyer (who was in a single defendant
13   with a small amount of resources and little history with the
14   charges), defendant has wealth, has retained counsel, has several
15   lawyers both in the United States and Israel, and has had access
16   to the government's several thousand pages of evidentiary
17   summaries for over two-years while defendant was in Israel
18   fighting extradition proceedings.  See, defendant Malul's Notice
19   of Motion for an Order That Permits All Discovery Provided by the
20   Government to Be Transferred, Disseminated or Sent Outside the
21   United States, filed on May 17, 2011, Court Record Entry No 68.

22   Courts of Appeals have noted that there is no authority
23   which requires the government to make an itemization of
24   exculpatory material or audio recordings.  United States v.
25   Mahat, 106 F.3d 89, 94 (5th Cir. 1997), revs'd on other grounds
26   [involved 500,000 pages of discovery and exculpatory documents
27   identified by defendant], United States v. Parsons, 367 F.3d 409
28   (5th Cir. 2004).

14

1    The government is well aware of its obligations under <u>Brady</u>.
2    In light of <u>Brady</u>, by the time of the hearing on defendant's
3    motion, the government will have produced additional indices to
4    defendant that will provide descriptions of the bates stamped
5    discovery materials, including audio recordings, and that will
6    identify the set of counts or overt act to which the discovery
7    materials pertain.

8    VIII.   <u>THE GOVERNMENT WILL AGREE TO EARLY DISCLOSURE OF JENCKS</u>

9    The government will agree to early disclosure of <u>Jencks</u>
10   statements and other materials.  In other words, the government
11   will not hold to the <u>Jencks</u> deadlines imposed under 18 U.S.C.
12   § 3500.  The government will produce to defendants the <u>Jencks</u>
13   material for disclosed witnesses, including any relevant grand
14   jury transcripts, as indicated in the schedules above.  For the
15   witnesses, with security issues, the government will produce to
16   defendants the <u>Jencks</u> material for these witnesses at the time
17   the government discloses the identity of these witnesses, per the
18   schedules above.

19   IX.   <u>THE GOVERNMENT HAS RECEIVED NO RECIPROCAL DISCOVERY</u>

20   The government has requested that the defendants agree to a
21   reciprocal exchange of discovery.

22
23   X.   <u>DEFENDANT'S MOTION SHOULD BE DENIED ON THE GROUNDS THAT IT
     IS A DISGUISED MOTION FOR A BILL OF PARTICULARS</u>

24   Where, as in this case, the charging document alleging the
25   offenses and discovery and other information provided by the
26   government give the defense far more detail concerning the
27   alleged crimes than is required, there is no need for the
28   itemization of discovery demanded by defendant, which amounts to

15

a form of a bill of particulars.  See <u>United States v. Drebin</u>, 557 F.2d 1316, 1325 (9th Cir. 1977) (a bill of particulars is inappropriate where full discovery is provided); <u>United States v. Giese</u>, 597 F.2d 1170, 1180 (9th Cir. 1979).

In <u>Giese</u>, the defendant sought a bill of particulars on how each of the overt acts alleged in the case contributed to the conspiracy, how certain alleged conspirator statements were made in furtherance of the conspiracy, and the defendant requested a list of conspiratorial acts performed by each conspirator.  The Ninth Circuit noted that "there is no requirement in conspiracy cases that the government disclose even all the overt acts in furtherance of the conspiracy."  <u>Giese</u>, 597 F.2d at 1180.  The Court of Appeals then affirmed the district court's denial of the motion, stating:

> Appellant's request for the when, where, and how of every act in furtherance of the conspiracy, was equivalent to a request for complete discovery of the government's evidence which is not a purpose of the bill of particulars.

<u>Giese</u>, 597 F.2d at 1181.

Moreover, courts have recognized that the filing of a bill of particulars, as defendant's motion for an itemization of discovery, poses the very real danger of limiting the government's presentation of its case by restricting its proof to evidentiary matters furnished in the bill or, in this case, if the prosecution misidentifies or fails to identify a listing of purportedly exculpatory material.  See, e.g., <u>United States v. Murray</u>, 297 F.2d 812, 819 (2d Cir. 1962).

The government is not required to lay before the defense its entire case and all its details and ramifications, nor may the

16

1 | government properly be compelled to disclose in advance of trial
2 | all of the evidence on which it will rely to prove the charges
3 | alleged in the indictment.

4 | This fact is borne out through a number of cases that have
5 | addressed requests similar to the request made by defendant here.
6 | In the Supreme Court case of Wong Tai v. United States, 273 U.S.
7 | 77 (1927), for instance, a defendant charged with conspiracy
8 | filed a motion for a bill of particulars, seeking to have the
9 | government set forth with particularity a variety of specific
10 | facts with respect to the overt acts alleged in the indictment,
11 | including times, places, names, instrumentalities used and the
12 | manner in which and circumstances under which the various acts
13 | had been committed.  The trial court denied the bill on the
14 | ground that it sought complete discovery of the government's
15 | case, and the Supreme Court held the denial to have been a proper
16 | exercise of discretion.  Id., 273 U.S at 82.

17 | In United States v. Ryland, 806 F.2d 941 (9th Cir. 1987),
18 | the Ninth Circuit held:

19 | Ryland's argument regarding the denial of a bill of
20 | particulars misconstrues the purpose of a bill of
21 | particulars.  A defendant is not entitled to know all the
22 | evidence the government intends to produce but only the
23 | theory of the government's case.  (Citations omitted).  Id. at
24 | 942.

25 | Similarly, in United States v. DiCesare, 765 F.2d 890,
26 | 897-98 (9th Cir. 1985), the Ninth Circuit upheld the denial of a
27 | motion for a bill of particulars for the following evidentiary
28 | details:

17

[Defendant's] requested a bill for three reasons: (1) to obtain the names of any unknown conspirators; (2) to determine the exact date on which the conspiracy allegedly began; and (3) to delineate all other overt acts that comprised the charged activity. These reasons, however, do not warrant a bill of particulars.

See also United States v. Calabrese, 825 F.2d 1342, 1347 (9th Cir. 1987) (defendant not entitled to bill of particulars identifying government witnesses); Giese, 597 F.2d at 1180 (defendant not entitled to a wide range of information such as lists of conspiratorial acts performed by each person named in the indictment and which statements created the conspiracy); United States v. Butler, 822 F.2d 1191, 1193-94 (D.C. Cir. 1987) (defendant not entitled to more specific information about times and places of the defendants' entry and exit into the conspiracy than already provided, namely the general period in which defendant made fraudulent loans); United States v. Anderson, 799 F.2d 1438, 1442 (11th Cir. 1986) (defendant not entitled to bill of particulars listing government witnesses or unindicted co-conspirators); United States v. Rosenthal, 793 F.2d 1214, 1227 (11th Cir. 1986) (bill of particulars may not be used to compel the government to provide facts regarding the existence and formation of a conspiracy nor to provide all overt acts which may be proven at trial).

As demonstrated above, defendant seeks information that is already identified or will be identified by way of indices, notice or discovery which does not justify a bill of particulars, no matter the label on the motion.

18

XI.   <u>CONCLUSION</u>

For the foregoing reasons, defendant's motion for discovery should be denied.

Dated: May 18, 2011

Respectfully submitted,

J. MARK CHILDS
Assistant United States Attorney
Attorneys for Plaintiff
United States of America

19

<u>DECLARATION OF J. MARK CHILDS</u>

I, J. MARK CHILDS, declare:

1.    I am an Assistant U.S. Attorney for the Central District of California.   I am assigned with Assistant U.S. Attorneys Mark Aveis and Benjamin Barron to prosecute the case of <u>U.S. v. Itzhak Abergil, et al.,</u> CR 08-1033-CAS.

2.    This declaration is in support of the (1) Government's Motion and Partially Opposed Motion for Order Continuing Trial and to Exclude Time under 18 U.S.C. § 3161 and Sever Counts and (2) Government's Opposition to defendant Itzhak Abergil's Motion for Disclosure of the Evidence and Witnesses to Be Used in the Government's Case-In-Chief and to Identify <u>Brady</u>/Giglio Material (CR No. 62).

3.    Exhibit 38 through 41 are letters sent to defense counsel as part of discovery in the <u>Abergil</u> case.

4.    Exhibits 42, 43 (Declaration of DEA Special Agent Deanne Reuter), 44 to 46, and 47 (Declaration of DEA Special Agent Deanne Reuter) were submitted to Israel as part of the extradition proceedings for the <u>Abergil</u> defendants in Israel.

5.    Exhibits 48 and 49 are listing of certain benefits provided to key cooperating testifying witnesses in the <u>Abergil</u> case.   These two exhibits have been produced in discovery.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct based on my personal knowledge or information or my belief, and that this declaration was executed on May 18, 2011 at Los Angeles, California.

J. MARK CHILDS