1  ANDRÈ BIROTTE JR.
   United States Attorney
2  ROBERT E. DUGDALE
   Assistant United States Attorney
3  Chief, Criminal Division
   J. MARK CHILDS (California Bar No.: 162684)
4  Assistant United States Attorney
   Organized Crime Drug Enforcement
5  Task Force Section
        1400 United States Courthouse
6       312 North Spring Street
        Los Angeles, California 90012
7       Telephone:  (213) 894-2433
        Facsimile:  (213) 894-0142
8       Email: mark.childs@usdoj.gov

9  Attorneys for Plaintiff
   UNITED STATES OF AMERICA

10
                    UNITED STATES DISTRICT COURT
11
              FOR THE CENTRAL DISTRICT OF CALIFORNIA
12

13  UNITED STATES OF AMERICA,      )   No. CR 08-1033-CAS
                                   )
14               Plaintiff,        )   GOVERNMENT'S REPLY TO
                                   )   DEFENDANT'S OPPOSITION TO THE
15               v.                )   GOVERNMENT'S PARTIALLY OPPOSED
                                   )   MOTION FOR ORDER CONTINUING
16  ITZHAK ABERGIL, et al.,        )   TRIAL AND TO EXCLUDE TIME
                                   )   UNDER 18 U.S.C. § 3161 AND
17               Defendants.       )   SEVER COUNTS; DECLARATIONS OF
                                   )   RUDI VAN POELE AND J. MARK
18                                 )   CHILDS; AND EXHIBITS THERETO
                                   )
19                                 )   Date: June 13, 2011
                                   )   Time: 1:30 p.m.
20  _____)

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . ii

I.     Summary . . . . . . . . . . . . . . . . . . . . . . 2

II.    The Complexity of the MDMA Trafficking Counts and
       Outstanding MLAT Requests Create Additional Excludable
       Time . . . . . . . . . . . . . . . . . . . . . . . . 3

III.   Belgium Federal Police Commissioner Rudi Van Poele
       is Unavailable for Trial in November 2011 and
       December 2011 . . . . . . . . . . . . . . . . . . . . 7

IV.    Request for Clarification of the Israeli Supreme
       Court Ruling Will Create A Need for Excludable Time . . 10

V.     The Number and Location of the Witnesses for the MDMA
       Counts . . . . . . . . . . . . . . . . . . . . . . . 11

VI.    Defendant's Claim That the Criminal Proceedings In
       Belgium Make For a Simple Trial Is Hallow . . . . . . . 12

VII.   Ozifa's and Government's Counsel Are Unavailable
       for Trial in November 2011 . . . . . . . . . . . . . . 13

VIII.  To Continued the First Trial to January 31, 2012,
       Only Limited Excludable Time Needs to Be Found . . . . 14

IX.    Conclusion . . . . . . . . . . . . . . . . . . . . . 15

i

1

## TABLE OF AUTHORITIES

2 **FEDERAL STATUTES** **PAGE(S)**

3  18 U.S.C. § 3161 ..................................... 1, 4, 16

4  18 U.S.C. § 3161(h)(7)(B)(iv) ............................. 14

5  18 U.S.C. § 3161(h) .................................. 3, 7, 8

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                        ii

1 ANDRÉ BIROTTE JR.
United States Attorney
2 ROBERT E. DUGDALE
Assistant United States Attorney
3 Chief, Criminal Division
J. MARK CHILDS (California Bar No.: 162684)
4 Assistant United States Attorney
Organized Crime Drug Enforcement
5 Task Force Section
      1400 United States Courthouse
6      312 North Spring Street
      Los Angeles, California 90012
7      Telephone:  (213) 894-2433
      Facsimile:  (213) 894-0142
8      Email: mark.childs@usdoj.gov

9 Attorneys for Plaintiff
UNITED STATES OF AMERICA

10

11                    UNITED STATES DISTRICT COURT

12            FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,      )   No. CR 08-1033-CAS
13                             )
                Plaintiff,     )   GOVERNMENT'S REPLY TO
14                             )   DEFENDANT'S OPPOSITION TO THE
                v.             )   GOVERNMENT'S PARTIALLY OPPOSED
15                             )   MOTION FOR ORDER CONTINUING
ITZHAK ABERGIL, et al.,        )   TRIAL AND TO EXCLUDE TIME
16                             )   UNDER 18 U.S.C. § 3161 AND
                Defendants.    )   SEVER COUNTS; DECLARATIONS OF
17                             )   RUDI VAN POELE AND J. MARK
                               )   CHILDS; AND EXHIBITS THERETO
18                             )
                               )   Date: June 13, 2011
19                             )   Time: 1:30 p.m.
                               )
20 _____)

21      Plaintiff United States of America hereby files its reply to

22 defendant Itzhak Abergil's ("I. Abergil's") opposition to the

23 Government's Partially Opposed Motion for Order Continuing Trial

24 and to Exclude Time under 18 U.S.C. § 3161 and Sever Counts

25 ("Motion").  Nothing in defendant's opposition refutes the facts,

26 on this record, that establish the legal grounds for this Court

27 to find additional excludable time under the Speedy Trial Act in

28 order to begin the first trial in this case on January 31, 2012.

I.   Summary

On this record, there are numerous grounds for finding excludable time between November 8, 2011 (the current trial date) and January 31, 2012 (the proposed trial date) for the MDMA Trafficking Counts (counts seven and eight), namely: (1) outstanding MLAT requests to the Netherlands, Japan and Belgium for evidence that the government intends to use in its case-in-chief; (2) the unavailability for trial in November 2011 and December 2011 of Rudi Van Poele, Commissioner of the Belgium Federal Police ("BFP"), who was the lead investigator in an extensive wiretap investigation in Belgium during the years 2003 and 2004 and was responsible for generating a substantial amount of evidence that the government intends to use at trial against defendants I. Abergil and Israel Ozifa ("Ozifa") for the MDMA charges; (3) the heavy motion practice and discovery review that will exhaust the remainder of 2011; and (4) the current trial schedule of a key member of the prosecution team and, apparently, counsel for defendant Ozifa.

Additionally, as more fully stated in the government's Motion and in the Stipulation to the Continue the Trial (See Exhibit 1 to Motion),[1] it is reasonable to continue the trial dates given the seriousness and complexity of the MDMA charges, the enormous amount of discovery that includes evidence from international and domestic wiretap investigations, the massive

---

[1]Exhibits 1 through 37 refer to the exhibits lodged on May 16, 2011 by the government in support of the Motion, exhibits 38 through 49 refer to exhibits lodged on May 18, 2011 in support of the government's opposition to defendant I. Abergil motion's for discovery, and exhibits 50 to 55 are attached hereto.

2

1  amount of intercepted wiretap calls that are in the Hebrew
2  language that are pertinent to the MDMA charges, the large number
3  of international witnesses and evidence that need to be
4  coordinated for the trial on the MDMA charges.

5      Four months ago, on January 25, 2011, defendant I. Abergil's
6  stipulated to continue the trial until November 8, 2011.  (See
7  Exhibit 2).  After the government agreed to sever certain counts,
8  I. Abergil now seeks to withdraw his stipulation and go to trial
9  immediately.  On May 3, 2011, Ozifa, per a written stipulation,
10 agreed, through his counsel, to continue the trial on the MDMA
11 Counts to January 31, 2011 because the discovery was
12 overwhelming, a thousands of pages of discovery and thousands of
13 audio recordings were in the Hebrew language, there were
14 conflicts with the trial schedule of Ozifa's counsel, and there
15 was a need for additional time to adequately prepare for trial.
16 See Exhibit 1, pg. 13.  Then, two weeks later, on May 19, 2011,
17 Ozifa, mysteriously, withdrew his stipulation.  See Exhibit 54.
18 These defendants attempt to retract their stipulations are
19 obvious gamesmanship.

20     The requested short trial continuance is to January 31,
21 2012.

22 II.  The Complexity of the MDMA Trafficking Counts and
23      Outstanding MLAT Requests Create Additional Excludable Time

24     Under 18 U.S.C. § 3161(h), "the following periods of delay
25 shall be excluded . . . in computing the time within which the
26 trial of any offense must commence [under the Speedy Trial Act]:
27 . . .

28

3

1      (8)   Any period of delay, not to exceed one year, ordered by
the district court upon an application of a party and a
2 finding by a preponderance of the evidence that an official
request, as defined in section 3292 of this title, has been
3 made for evidence of any such offense and that it reasonably
appeared at the time the request was made, that such
4 evidence is, or was, in such foreign country.

5 18 U.S.C. § 3161(h)(8).[2]

6      Pursuant to Section 3161(h)(8), additional excludable time

7 exists because of the government's outstanding requests to

8 multiple foreign governments for evidence that the government

9 will use in its case-in-chief for the MDMA charges.

10      At the trial of the MDMA Trafficking Counts, the government

11 will introduce wiretap evidence, surveillance photographs,

12 videos, business records, phone records, pen registers and other

13 evidence from the United States, Israel, Spain, Belgium and

14 Netherlands.   The government will call witnesses located all over

15 the United States, Israel, Spain, Belgium, and Japan.   Also, one

16 witness is located in the Democratic Republic of the Congo.

17      At trial, the government intends to introduce the following

18 foreign evidence, *inter alia*, for which outstanding MLAT requests

19 exist:

20 <u>Spanish MLAT</u>

21      In the Summer of 2003, the Spanish National Police ("SNP")

22

23      [2] Section 3292(d) defines an "official request" as ". . . a
request under a treaty or convention," such as a request under a
24 mutual legal assistance treaty ("MLAT").   The Office of
International Affairs of the United States Department of Justice
25 ("OIA") made official requests, as defined in 18 U.S.C.
§ 3292(d), to an "authority of a foreign country," namely, Israel
26 on or about November 16, 2009 (with a clarification request on
August 25, 2010); Spain on or about June 30, 2010; Belgium on or
27 about May 19, 2010; and the Netherlands on or about May 26, 2010
(with supplemental request on August 19, 2010), among others.
28

4

1  initiated a wiretap investigation into Abergil's drug trafficking
2  organization ("DTO") and intercepted calls involving I. Abergil
3  and Ozifa, wherein they discussed their worldwide drug
4  trafficking activities.   Thousands of wiretap recordings,
5  hundreds of pages of summaries of calls and dozens of transcripts
6  from the SNP investigation have been produced in discovery.

7       In a MLAT request to Spain dated June 30, 2010, the
8  government requested evidence for the MDMA charges, such as,
9  SNP's entire file on its investigation of the Abergil DTO in the
10  year 2003, court orders regarding SNP's wiretaps in the year
11  2003, and photographs and reports regarding surveillance of the
12  Abergil DTO.   <u>See</u> Exhibit 50 attached hereto; Childs Decl. at
13  ¶ 15.

14       On or about April 20, 2011, the U.S. Attorney's Office in
15  the Central District of California received, approximately, 1157
16  pages of investigatory materials and a computer disk.   These
17  materials are in the process of being translated from Spanish to
18  English.   <u>See</u> Exhibit 51 attached hereto; Childs Decl. at ¶¶ 15
19  and 16.   Until the translation of this material is complete, the
20  government cannot confirm that the SNP has satisfied the
21  government's MLAT requests.

22       <u>Netherlands MLAT</u>

23       In around October 2003, the Netherlands National Police
24  Agency ("KLPD") began a wiretap investigation into Abergil's DTO
25  that operated in the Netherlands (Holland).[3]   The KLPD

26  _____

27       [3] The KLPD investigation is important to the MDMA charges
   for three reasons (1) the government that in 2003 and 2004 the
28  Abergil DTO received its MDMA from sources in the Netherlands;

1   intercepted I. Abergil directing members of the DTO, requesting
2   information about the recent arrest of key DTO members, and
3   discussing the activities of Ozifa aka "the Tall One."   See
4   Exhibit 35, pages 703 to 737.

5       In a MLAT dated May 26, 2010 (Exhibit 52, attached hereto)
6   and a supplemental request to the Netherlands, dated August 19,
7   2010 (See Exhibit 36, attached to the Motion), the government
8   requested that the Netherlands produce all the wiretap orders and
9   certified copies of the audio recordings for these intercepted
10  calls, and all evidence gathered during the KLPD investigation.

11      Still outstanding from the MLAT requests to the Netherlands,
12  pertinent to the MDMA Trafficking Counts, are (1) the reports and
13  materials of the investigation of the Dutch authorities that
14  occurred in the fall of 2003 (including, photographs, videos,
15  etc.); (2) certified copies of wiretap intercepts of the Abergil
16  DTO recorded in 2003 (the government has received some copies of
17  these audio recording but these copies were not received from the
18  Netherlands and the government is unsure if more calls exist);
19  (3) reports and evidence from the arrest of Itzhak Abergil in
20  September 2004;   (4) immigration and border crossing records of
21  I. Abergil, Ozifa and members of their DTO; and (5)
22  identification of persons who will testify as to the foundation
23  and authentication of the intercepted calls in 2003 (See Exhibit
24  36, pgs. 698 to 699 and Exhibit 53).

25

26  _____

27  (2) the Netherlands wiretaps intercepted I. Abergil and members
    of his DTO during a relevant time pled in the MDMA charges,
    namely, the fall of 2003; and (3) Belgium borders the
28  Netherlands.

6

1    Specifically, the Netherlands has not yet produced evidence

2    for the MDMA charges listed in the May 26, 2010 MLAT in the

3    following sections: Sections A(14) and A(15) [reports, statements

4    and evidence of I. Abergil during his arrest in September 2004],

5    A(17) [entire investigative file (reports, photographs,

6    audio/video recordings, witness statements) regarding the KLPD's

7    wiretap investigation of the Abergil DTO], B(1) [immigration

8    records related to members of the Abergil DTO], B(2) [criminal

9    records of members of the Abergil DTO], B(6) [reports of I.

10   Abergil's arrest in September 2004], C(2) [wiretap recordings of

11   the Abergil DTO in 2003], C(3) [court orders regarding the

12   wiretap recordings of the Abergil DTO in 2003], and F(1) and G(7)

13   [identification of KLPD personnel who executed the wiretap on the

14   Abergil DTO in 2003].  See Exhibit 53 and Childs Decl, ¶ 12.

15   Japan MLAT

16    As discussed in the Motion, the Japan MLAT will create

17   excludable time until January 31, 2011.  The evidence from Japan,

18   at a minimum, is important 404(b) evidence of the Abergil DTO's

19   MDMA trafficking.

20   Belgium MLAT

21    As discussed in the Motion, certifications of certain

22   evidence is needed from Belgium.

23   III. Belgium Federal Police Commissioner Rudi Van Poele is
          Unavailable for Trial in November 2011 and December 2011

24

25    Under 18 U.S.C. § 3161(h), "the following periods of delay

     shall be excluded . . . in computing the time within which the

26   trial of any offense must commence [under the Speedy Trial Act

27   ("STA")]: "[a]ny period of delay resulting from the absence or

28

7

1   unavailability . . . of an essential witness."  18 U.S.C.

2   § 3161(h)(3)(A).  For purposes of Section 3161(h)(3)(A), ". . .

3   an essential witness shall be considered unavailable whenever his

4   whereabouts are known but his presence from trial cannot be

5   obtained by due diligence."

6       As explained below and in the attached declaration of BFP

7   Commissioner Rudi Van Poele, Commissioner Van Poele's is

8   unavailable for the current trial date and his presence at trial

9   in November 2011 or December 2011 cannot be secured by due

10   diligence.  Commissioner Van Poele is a resident and citizen of

11   Belgium, a sovereign nation, and, thus, beyond the subpoena power

12   of the United States.  However, Commissioner Van Poele is

13   available for trial beginning in January 2012.  Therefore, the

14   Court has sufficient grounds to exclude November 1, 2011 until

15   December 31, 2011 under the STA based on the unavailability of

16   Commissioner Van Poele.[4]  See Van Poele decl., attached hereto.

17

18      [4] The pertinent portion of the treaty between Belgium and
the United States ("Treaty"), at Article 4 - Appearance of
19   Witness and Experts in the Requesting State -, states that "[i]f
the Requesting State [United States] considers that the personal
20   appearance of the witness or expert before its judicial
authorities is particularily necessary it may so state in its
21   request, and the Requested State shall invite the witness or
expert to appear.  The Requested State shall promptly inform the
22   Requesting State of the reply of the witness or expert."
Pursuant to an MLAT to Belgium, Rudi Van Poele has been invited
23   to testify in our case.  See Exhibit 54.  Under the Treaty, there
is no mandatory compulsion of a witness from Belgium to travel to
24   the United States [the Requesting State] to testify in the
Abergil trial.  The Treaty, Article 4, subsection 3, states: "The
25   witness or expert who has failed to appear to answer a summons to
appear, service of which has been requested, shall not be subject
26   to any punishment or measure of restraint in the Requesting State
[United States], even if the summons contains a notice of
27   penalty."

28

8

1    BFP Commissioner Rudi Van Poele is a critical and important
2    witness for the government to prove the MDMA charges.   Id.
3    In Belgium, during the years 2003 and 2004, Commissioner
4    Van Poele (1) applied for and received court authorization to
5    intercept telephones used by I. Abergil, Ozifa and members of
6    their DTO and (2) led a team of investigators who conducted
7    surveillance, executed search warrants and wiretaps against
8    Abergil, Ozifa and members of their DTO.  Also, Commissioner Van
9    Poele was responsible for researching, gathering and
10   authenticating documents, audio recordings, photographs and other
11   things that were produced to the United States, pursuant to
12   official requests, namely, MLAT requests.   Id.
13   The government anticipates that Commissioner Van Poele will
14   testify about, among other things, (1) the issuance of and
15   execution of court orders for wiretaps, pen registers,
16   surveillance and search warrants; (2) chain of custody for
17   certain evidence, such as audio recordings of wiretaps, pen
18   register data and materials produced to the United States;
19   (3) the collection, production and authentication of materials
20   sent to the United States in response to official requests from
21   the United States to Belgium; and (4) the investigatory steps
22   taken during his investigation that led to seizures of MDMA,
23   including in Japan.   Id. and Childs Decl. at ¶¶ 3-8.
24   Further, Commissioner Van Poele will be a necessary witness
25   to refute allegations by the defense attacking the integrity of
26   or thoroughness of the BFP's investigation.  Childs Decl. at ¶ 8.
27
28

9

IV.  Request for Clarification of the Israeli Supreme Court
     Ruling Will Create A Need for Excludable Time

     Defendant claims that the Israeli Supreme Court ruled that
the government is prohibited from introducing evidence of
defendant I. Abergil's and Ozifa's extraterritorial drug
trafficking.   The government will move this Court to introduce
this evidence under 404(b) or as inextricably intertwined in the
charged conspiracy.   If necessary, the government will seek an
official clarification from Israel regarding whether the Israeli
Supreme Court barred the government from using any specific
evidence against defendants to prove counts seven or eight or any
other counts.

     This is a preview of the motion practice to come.

     In order to be efficient, the government will file numerous
motions seeking to admit wiretaps and other evidence collected
Belgium, Spain, Israel and the Netherlands.   Also, I. Abergil
intends to litigate the admissibility of statements of co-
conspirator on the domestic and foreign wiretaps, that support
the MDMA charges.   Each such motion will take weeks to prepare to
litigate and to litigate.

     Defendant suggests that the government has not explored the
possibility of stipulating to the admissibility of evidence.
However, both I. Abergil and Ozifa have a proven propensity to
withdraw, or attempt to withdraw, signed stipulations months or
weeks after they were accepted by the Court or given to the
government.   Although slightly skeptical, the government will
explore discussions of pre-trial stipulations to the
admissibility of evidence with defense counsel for all counts.

10

1    V.    <u>The Number and Location of the Witnesses for the MDMA Counts</u>

2       For the MDMA Trafficking Counts, the government estimates

3 that there will be several dozen witnesses. The expected

4 witnesses reside in Israel, Spain, Belgium, Netherlands, Japan,

5 the United States and the Congo. The witnesses from foreign

6 countries will have to be notified of the trial date well in

7 advance of trial in order to secure their appearance via MLAT

8 requests. Foreign law enforcement officers will need to reserve

9 time in their schedules and obtain the approvals of their

10 superiors in order to attend trial. All of this will take

11 enormous advanced planning.

12       For example, Huybrects "Lars" Hilarious, Belgium Federal

13 Police ("BFP"), Brussels, was responsible, along with Patrick

14 Vanderzypen, BFP Chief Inspector, Brussels, for obtaining the

15 following: court orders for materials gathered in and around

16 Brussels, such as, hotel records, phone records, historical phone

17 data and videos that the government intends to use in its case-

18 in-chief in the MDMA charges. This evidence relates to

19 defendants Israel Ozifa's and Itzhak Abergil's involvement in the

20 shipments of 100,000 MDMA tablets provided by Yaniv Haziza to

21 Tyreshia Baldwin in Brussels in mid-December 2003 and, then, sent

22 by Tyreshia Baldwin from Brussels to the United States where it

23 was seized by law enforcement. However, investigator Hilarious

24 is currently in the Democratic Republic of Congo in Africa on a

25 multi-year assignment with the United Nations. Childs Decl.,

26 attached hereto, at ¶ 9.

27       Several witnesses are expected to be under law enforcement

28 protection, which present logistical and security issues.

11

VI.  **Defendant's Claim That the Criminal Proceedings In Belgium Make For a Simple Trial Is Hallow**

Defendant claims that the MDMA counts are based almost exclusively on evidence introduced at trials in Belgium; and, thus, the trial on the MDMA counts will mirror the Belgium proceedings.  In Belgium, in and around 2008, defendants I. Abergil and Ozifa were sentenced to sixty months and forty months imprisonment, respectively, *in absentia*.  See Exhibit 52, bates number 11851 (summary of convictions and sentences from the BFP).

First, in Belgium, the criminal proceedings did not require testimony, under oath, of witnesses.[5]  Thus, the Belgian court proceedings are of little guidance.

Second, at trial in the MDMA charges in this case, the government will introduce evidence of the BFP's investigation, other foreign law enforcement agencies' investigations[5], and the U.S. investigation of the Abergil DTO's drug trafficking partners located in the United States, namely, the Eliyahu Marciano DTO. The Marciano DTO was subject to an extensive wiretap

---

[5]See Exhibit 52, bates number 11851 ("the Belgian criminal process is a written process, in which the court goes to the case file to reach a verdict.  Therefore, witnesses are not called. Only the arguments by defense attorneys on behalf of the respective suspects were heard").

[5] The MDMA Trafficking Counts against I. Abergil and Ozifa, these charges were the result of several international wiretap investigations by law enforcement in the United States, Spain, Belgium and Israel.  During the years 2003 and 2004, the DEA, ICE, the Belgium Federal Police and the Spanish National Police conducted multi-month wiretap investigations on telephones used by I. Abergil, Ozifa, members of I. Abergil's DTO, and the DTO's customers in Los Angeles, California and elsewhere.  The thousands of intercepted telephone calls, which have been produced, are primarily in Hebrew.

investigation in Los Angeles during the years 2003 and 2004.
During these wiretaps, Marciano and members of Abergil's DTO were
intercepted discussing the seizure of MDMA in the United States
in December 2003 that was supplied by Ozifa and Abergil from
Belgium.

Third, the discovery in this enormous.  The government has
produced or made available to the defense over 25,000 pages of
written discovery, thousands of intercepted telephone calls from
various international investigations, hundreds of pages of
transcripts of pertinent calls, and partial indexes of the
pertinent calls and other investigatory materials.  See e.g.,
Exhs. 15, 16, 23, 24 (pages 273 to 315 contain a summary and
index of certain investigatory materials), 32 and 34.[6]

Thus, the MDMA charges are complicated.

VII. Ozifa's and Government's Counsel Are Unavailable
     for Trial in November 2011

The trial schedule of defense counsel for Ozifa, Ted
Tedford, conflicts with the November 8, 2011 trial date.  See
Exh. 35.  Ozifa's counsel is available on January 31, 2012. Per

---

[6] Additionally, the written discovery includes: (a) hundreds
of pages of documents related to the extradition of I. Abergil
and Ozifa from Israel; (b) thousands of pages of wiretap related
materials from the United States, Spain and Belgium, including
affidavits and applications for authorization to intercept wire
communications; and summaries and transcripts of telephone calls
from, at least, several countries; (c) reports by law enforcement
in the United States, Belgium and Spain including descriptions of
surveillance and seizures of MDMA; (d) copies of search warrants
issued in the United States and Belgium; (e) statements made by
certain co-conspirators, during interviews; (f) laboratory
reports on narcotics; (g) telephone records; (h) copies of
photographs; (I) reports on the execution of various searches,
among other reports; and (j) statements of certain cooperating
witnesses (Id.).

13

1   Mr. Tedford, Mr. Tedford's trial schedule is as follows:   <u>Morton</u>
2   <u>v. Aramark</u>, trial date of July 25, 2011 (estimate 7 to 10 days);
3   <u>Andrade v. Barranca Medical Center</u>, trial date of August 8, 2011
4   (estimate of 7 to 10 days); <u>United States v. White, Cuco Portillo</u>
5   <u>et al.</u>, trial date of September 13, 2011 (estimate of 30 days -
6   federal criminal case); <u>United States v. Aguirre, Eddie Perez, et</u>
7   <u>al.</u>, trial date of November 1, 2011 (estimate of 45 days); <u>United</u>
8   <u>States v. Kele, Lazlo Kopacsi</u>, trial date of 11/29/11 (30 days);
9   <u>Douglas Hall v. City of Arcadia</u> (Federal civil case), trial date
10  of December 6, 2011 (trial estimate of 10 days); and <u>Graham v.</u>
11  <u>Snowden</u>, trial date of December 13, 2011 (trial estimate of 7
12  days).   With this trial schedule, justice requires the trial date
13  to be moved to January 31, 2011 in order to allow Mr. Tedford
14  adequate time to prepare for trial, given the complexity of this
15  case.

16          AUSA Mark Aveis has a conflict with the current trial date.

17          Ozifa's and the government's need for continuity of counsel
18  are grounds for excludable time.   18 U.S.C. § 3161(h)(7)(B)(iv).

19  VIII.  <u>To Continued the First Trial to January 31, 2012,</u>
           <u>Only Limited Excludable Time Needs to Be Found.</u>
20

21          The Court previously found, pursuant to a stipulation by <u>all</u>
    parties, that the time period between each defendant's
22
    arraignment (January 13, 2011) and the initial trial date
23
    (November 8, 2011) is excludable time under the STA.   Thus, an
24
    additional 70 days of excludable time remains.   As a result, the
25
    Court, without the finding of any additional excludable time, can
26
    move the initial trial date from November 8, 2011 to January 17,
27
    2012 (70 days from November 8, 2011).
28

                                14

IX.   <u>Conclusion</u>

Applicable law clearly favors the continuances of the trial dates in complex, multi-defendant cases such as the present case. The Court can and should conclude that the requested continuances are lawful and promotes judicial efficiency and the ends of justice.  Denial of this motion would be against the great weight of authority.

The government requests the Court to grant the motion.

DATED: June 3, 2011                   Respectfully submitted,


                                      J. MARK CHILDS
                                      Assistant United States Attorney

15

<u>DECLARATION OF J. MARK CHILDS</u>

I, J. MARK CHILDS, declare:

1.   I am an Assistant U.S. Attorney for the Central District of California.   I am assigned with Assistant U.S. Attorneys Mark Aveis and Benjamin Barron to prosecute the case of <u>U.S. v. Itzhak Abergil, et al.,</u> CR 08-1033-CAS.

2.   This declaration is in support of the Government's Reply to Defendant's Opposition to the Government's Motion and Partially Opposed Motion for Order Continuing Trial and to Exclude Time under 18 U.S.C. § 3161.

<u>Belgium Federal Police Commissioner Rudi Van Poele</u>

3.   During the week of May 23, 2011, Belgium Federal Police ("BFP") Commissioner Rudi Van Poele, met with myself, other prosecutors, and investigators, in Los Angeles to discuss, among other things, the evidence gathered during the BFP's investigation of the Abergil DTO in the years 2003 and 2004.

4.   During the week of May 23, 2011, in Los Angeles, I asked Commissioner Van Poele about his availability for trial in Los Angeles in November 2011.   Commissioner Van Poele indicated, as stated in his declaration signed on May 27, 2011, that (1) he plans to take two weeks of vacation from his official duties and travel to Turkey in November 2011 in order to the attend the conclusion of case proceedings ("Turkish case") and (2) he, likely, will not be authorized to travel to the United States in November 2011 and December 2011 by management because of end of the year budget issues.   Prior to the week of May 23, 2011, I was unaware of these issues relating to Mr. Van Poele's

16

1   unavailability for trial in the <u>Abergil</u> case in November 2011 and

2   December 2011.

3       5.   In order to confirm that the proceedings in <u>Turkish</u>

4   <u>case</u> were still, likely, to conclude in November 2011, at my

5   request, during the week of May 23, 2011, Commissioner Van Poele

6   contacted, by telephone, a person (I believe a relative) in

7   Turkey and a representative in Europe, who are both involved in

8   the <u>Turkish case</u>.  At the conclusion of those telephone calls

9   (spoken in a foreign language), Commissioner Van Poele indicated

10  that the <u>Turkish case</u> was still anticipated to be concluded in

11  November 2011.

12      6.   In the government's view, according to several thousand

13  pages of BFP reports and Belgium court documents, Commissioner

14  Van Poele is an essential witness for the government in the

15  <u>Abergil</u> case, including, to testify as a key witness about

16  evidence for the MDMA Trafficking counts (counts seven and

17  eight).  Commissioner Van Poele is expected to testify about

18  (1) procedures for obtaining the court orders for wiretaps,

19  search warrants, surveillance, cell site data and pen registers

20  in Belgium; (2) procedures utilized for obtaining court orders

21  for several wiretaps, pen registers and cell site data in Belgium

22  that intercepted or related to defendants Itzhak Abergil, Israel

23  Ozifa and alleged members of their drug trafficking organization

24  ("DTO") in the years 2003 and 2004 (the government intends to

25  introduce this evidence at trial in support of the MDMA

26  Trafficking Counts) ("Belgium Audio Recordings"); (3) the

27  interception and recording of Belgium Audio Recordings and the

28  collection of pen register data; (4) the chain of custody of the

1  transfer of the Belgium Audio Recordings and copies of materials

2  seized during the execution of search warrants that were

3  transferred to the United States, pursuant to official requests

4  for assistance from the United States to Belgium ("MLAT"); and

5  (5) investigatory steps taken by the BFP in response to

6  information from the Belgium Audio Recordings, such as, (a) the

7  seizure in and around Kobe, Japan of, approximately, 60,000 MDMA

8  tablets by the Japanese investigators/inspectors in and around

9  mid-July 2004 and (b) the execution of search warrants in and

10  around Antwerp, Belgium against Ozifa and members of the Abergil

11  DTO.

12      7.    Additionally, Commissioner Van Poele will testify about

13  his researching, gathering and authenticating documents, audio

14  recordings, photographs and other things, produced to the United

15  States, pursuant to official requests (such as MLAT requests).

16      8.    Separately, if the defense attacks the credibility or

17  thoroughness of the BFP's investigation, then Rudi Van Poele

18  would be an essential witness that the government would use to

19  rebut such arguments or evidence by the defense.

20      9.    Based discussions with Commissioner Van Poele and the

21  extensive case files from Belgium (See Exhibit 24, pages 282

22  through 313 that list numerous reports of investigation by

23  Commissioner Van Poele), Commissioner Van Poele has spent

24  hundreds of hours investigating the Abergil DTO's activities in

25  Belgium and abroad.  Thus, in the government's view (and I

26  believe, Commissioner Van Poele's view), Commissioner Van Poele

27  is the most knowledgeable person about the BFP's investigation

28  into the Abergil's DTO activities in 2003 and 2004.

1          10.   Also, while in Los Angles, during the week of May 23,
2    2011, Commissioner Van Poele facilitated my telephone contact
3    with Patrick Vanderzypen, BFP Chief Inspector, Brussels, Belgium.
4    Based on translated reports of the BFP, Huybrects "Lars"
5    Hilarious, BFP, Brussels, and Patrick Vanderzypen, were primarily
6    responsible for securing the following: court orders, hotel
7    records, phone records, historical phone data and videos that
8    were obtained in and around Brussels, Belgium (as oppose to
9    Antwerp, Belgium where Commissioner Van Poele is based).   The
10   government intends to use in its case-in-chief for the MDMA
11   Trafficking Counts the above referenced evidence collected by
12   Chief Inspector Vanderzypen and/or investigator Hilarious (or at
13   their direction) as evidence of defendants Israel Ozifa and
14   Itzhak Abergil's involvement in shipments of MDMA tablets to the
15   United States.   However, per BFP Chief Inspector Vanderzypen, the
16   Chief Inspector Vanderzypen is available, if necessary, for trial
17   in 2011 or 2012 but Huybrects "Lars" Hilarious is currently on a
18   multi-year detail with the United Nations in the "Congo" in
19   Africa that will continue into 2012.   Thus, extensive planning
20   needs to be done to coordinate BFP investigator Hilarious'
21   appearance at trial.   I have not contacted Mr. Hilarious.
22        PLEA OFFERS
23        10.   A written plea offer has been extended to Meir Abergil.
24   A written plea offer will be extended to Itzhak Abergil.
25        MLATS
26        11.   A draft of a request to the Central Authority of Japan
27   for evidence related to the MDMA Trafficking Counts and the RICO
28   Murder Counts was submitted to OIA on or about May 12, 2011

                                    19

1   ("Japan MLAT").  See Exhibit 4.  U.S. law enforcement

2   representatives in Japan have been contacted about the Japan MLAT

3   and have been provided a draft of the Japan MLAT.  As a result of

4   modifications to the draft MLAT, I anticipate, per OIA, an

5   informal version of the Japan MLAT will be provided to the

6   Japanese authorities and that a formal version of the Japan MLAT

7   will be provided to the Japanese authorities by the end of June

8   2011.

9          12.  Attached hereto as **Exhibit 53** is a MLAT sent to the

10  Netherlands on May 26, 2010 requesting evidence for, among other

11  counts, the MDMA Trafficking Counts.  Also, filed with the court

12  in support of the Motion as Exhibit 35, pages 703 to 737, are

13  translation of summaries of intercepted calls of purported

14  members of the Abergil DTO, including I. Abergil, from wiretaps

15  conducted in the Netherlands, purportedly, in October 2003.  In

16  the MLAT dated May 26, 2010 and a supplemental request dated

17  August 19, 2010 (See Exhibit 36), the government requested that

18  the Netherlands produce all the wiretap orders and certified

19  copies of the audio recordings for these intercepted calls.

20  Still outstanding from these MLAT requests, pertinent to the MDMA

21  Trafficking Counts, are (1) the reports and materials of the

22  investigation of the Dutch authorities that occurred in the fall

23  of 2003 (including, photographs, videos, [if any] etc.); (2)

24  certified copies of wiretap intercepts of the Abergil DTO

25  recorded in 2003 (the government has received some copies of

26  these audio recording but these copies were not received from the

27  Netherlands and the government is unsure if more calls exist);

28  (3) reports and evidence from the arrest of Itzhak Abergil in

1   September 2004;  (4) immigration and border crossing records of

2   I. Abergil, Ozifa and members of their DTO; and (4)

3   identification of persons who will testify as to the foundation

4   and authentication of the intercepted calls in 2003 (See Exhibit

5   36, pgs. 698 to 699 and Exhibit 53).

6        13.  The outstanding items are listed in the May 26, 2010

7   MLAT to the Netherlands (Exhibit 53) are listed in Sections

8   A(14)[reports and statements of I. Abergil during his arrest in

9   September 2004], A(15) [copy of documents seized from I. Abergil

10  during his arrest in September 2004], A(17) [entire investigative

11  file (reports, photographs, audio/video recordings, witness

12  statements) regarding the KLPD's wiretap investigation of the

13  Abergil DTO], B(1) [immigration records related to members of the

14  Abergil DTO], B(2) [criminal records of members of the Abergil

15  DTO], B(6) [reports of I. Abergil's arrest in September 2004],

16  C(2) [wiretap recordings of the Abergil DTO in 2003], C(3) [court

17  orders regarding the wiretap recordings of the Abergil DTO in

18  2003], and F(1) and G(7) [identification of KLPD personnel who

19  executed the wiretap on the Abergil DTO in 2003].

20       14.  The government will issue a supplemental MLAT to

21  Belgium in order to obtain original evidence or copies of

22  authenticated documents needed for trial in the MDMA Trafficking

23  Counts.

24       15.  Per records and translations of wiretap intercepts, in

25  the Summer of 2003, the Spanish National Police ("SNP") initiated

26  a wiretap investigation into Abergil's drug trafficking

27  organization ("DTO") and intercepted calls involving I. Abergil

28  and Ozifa, wherein they discussed their worldwide drug

21

trafficking activities.  The wiretap recordings from the SNP have been produced in discovery.

16.  Attached hereto as **Exhibit 50** is a MLAT request to Spain dated June 30, 2010 wherein the government requested evidence from Spain related to the MDMA Drug Trafficking Counts, such as, SNP's entire file on its investigation of the Abergil DTO during the year 2003, orders regarding SNP's wiretaps that the government will use in its case-in-chief, border crossing records and photographs and reports regarding surveillance of the Abergil DTO.  See Exhibit 50 attached hereto.

17.  Attached hereto as **Exhibit 51** is a letter from the U.S. Office of International Affairs to myself that enclosed, approximately, 1157 pages of investigatory materials, including court orders, reports, photographs, and bank records, that are in the process of being translated from the Spanish language into English.  See Exhibit 50 attached hereto.  Until this translation is complete, the government cannot confirm that the SNP has satisfied the government's MLAT requests.

18.  Attached hereto as **Exhibit 52** is a translation of materials from the Dutch language into the English language that relate to the prosecution, conviction and sentencing of I. Abergil and Ozifa.  These materials are English translations from materials that were produced by Belgium, pursuant to a MLAT request.  These documents are bates stamp nos. 118526 to 118554.

19.  Attached as **Exhibit 54** is an MLAT sent to Belgium that invited Rudi Van Poele to testify in the United States.

1    20.   Attached as **Exhibit 55** is an e-mail dated May 19, 2011

2  indicating that, per Ozifa's counsel, that Ozifa withdrew the

3  stipulation to continue the trial to January 31, 2011.

4    I declare under penalty of perjury under the laws of the

5  United States that the foregoing is true and correct based on my

6  personal knowledge or information or my belief, and that this

7  declaration was executed on June 3, 2011 at Los Angeles,

8  California.

9

10                       J. MARK CHILDS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23

1                    DECLARATION OF RUDI VAN POELE

2   I, Rudi Van Poele, declare as follows:

3        1.   I, Rudi Van Poele, am a Commissioner of the Belgium

4   Federal Police, Antwerp, Officer of Criminal Investigative

5   Department, Assistant Official of the Crown Prosecutor.

6        2.   During the years 2003 and 2004, I was the lead

7   investigator in a wiretap investigation, in Belgium, that

8   targeted Itzhak Abergil ("Abergil"), Israel Ozifa ("Ozifa") and

9   members of their drug trafficking organization ("DTO").

10       3.   In Belgium, during the years 2003 and 2004, I applied

11  for and received court authorization to intercept telephones

12  used by Abergil, Ozifa and members of their DTO.  During 2003

13  and 2004, I lead a team of investigators and officers who

14  conducted surveillance, executed search warrants and wiretaps

15  against Abergil, Ozifa and members of their DTO.  Further,

16  during this time, I coordinated my efforts against the Abergil

17  DTO with foreign law enforcement agencies.

18       4.   My investigation led to criminal charges being

19  brought, in Belgium, against Abergil, Ozifa and members of their

20  DTO.  In Belgium, after a trial in absentia, wherein they had

21  defense counsel, Abergil and Ozifa were convicted of criminal

22  charges.  Also, I have been responsible for researching,

23  gathering and authenticating documents, audio recordings,

24  photographs and other things, produced to the United States,

25  pursuant to official requests, such as MLAT requests.

26       5.   I understand that a criminal case against Abergil and

27  Ozifa is scheduled to begin in Los Angeles, California, in

28  November 2011.  I understand that I will be a witness for the

government of the United States and will likely testify about, among other things, (1) the issuance of and execution of court orders for wiretaps, pen registers, surveillance and search warrants; (2) chain of custody for certain evidence, such as audio recordings of wiretaps, pen register data and materials produced to the United States; (3) the collection, production and authentication of materials sent to the United States in response to official requests from the United States to Belgium; and (4) the investigatory steps taken during my investigation.

6.   I am unavailable for trial in Los Angeles in November 2011 for two reasons.  First, I am involved as a plaintiff in a criminal and civil case in Turkey.  Based on information from my Turkish lawyers (that I receive through third parties because my Turkish lawyers do not speak a language that I speak), the court proceedings in Turkey will likely be concluded in November 2011. If the proceedings in Turkey result in a favorable verdict, I stand to receive back my apartment that was stolen from me.  As a result, as of the present time, I plan to take two weeks of vacation from my official duties and travel to Turkey in November 2011 in order to attend the conclusion of these proceedings in Turkey.

7.   Second, pursuant to management at the Belgium Federal Police, Antwerp, I will, likely, not be authorized to travel to the United States in November 2011 and December 2011 because of end of the year budget issues.  For last few years, the management at Belgium Federal Police, Antwerp, is very strict about foreign traveling at the end of the year due to financial

1    restrictions.  However, no such foreign travel restrictions will

2    exist in January 2012 through October 2012 from the management

3    of Belgium Federal Police, Antwerp because new financial

4    resources will be available.

5         I declare under penalty of perjury, under the laws of the

6    United States, that the foregoing is true and correct.

7    DATED: May 27, 2011

8

9                              Rudi Van Poele

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   3