UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# CRIMINAL MINUTES - GENERAL

| Case No. | CR 08-1033 CAS | Date | June 13, 2011 |
|---|---|---|---|

| Present: The Honorable | CHRISTINA A. SNYDER |
|---|---|

| Interpreter | Ayalla Dollinger<br>Sophie Treister |
|---|---|

| ISABEL MARTINEZ/<br>CATHERINE JEANG | LAURA ELIAS | Mark Childs<br>Mark Aveis<br>Patrick McLaughlin<br>Ben Barron |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| 1) Itzhak Abergil | X | X | | 1) Victor Sherman | X | | X |
| 2) Meir Abergil | X | X | | 2) Anthony Brooklier | X | | X |
| 3) Sasson Barashy | X | X | | 3) Stephen Demik, DFPD | X | X | |
| 5) Moshe Malul | X | X | | 5) Donald Marks | X | | X |
| 6) Israel Ozifa | X | X | | 6) James Tedford | X | X | |
| | | | | Karen Goldstein, Pro Bono | X | | |

| Proceedings: | **Defendant #1's Motion for Disclosure of the Evidence And Witnesses to be Used in the Government's Case-in-Chief and to Identify *Brady/Giglio* Material** (filed Under Seal 05/02/11)<br><br>**Defendant #5's Joinder** (filed 06/07/11)<br><br>**Defendant #6's Joinder** (filed 06/09/11) |
|---|---|

## I.   INTRODUCTION & BACKGROUND

On or about July 23, 2008, a federal grand jury returned a 32 count indictment against seven defendants: Itzhak Abergil ("I. Abergil"), Meir Abergil ("M. Abergil"), Sasson Barashy ("Barashy"), Yoram El-Al ("El-Al"), Moshe Malul ("Malul"), Israel Ozifa ("Ozifa"), and Luis Sandoval ("Sandoval"), in this case. The 32 counts of the indictment are grouped as follows:

(1) a RICO conspiracy count (count 1) and related extortion (counts 2 and 9–12) and money laundering counts (counts 13–32) against I. Abergil, M. Abergil and Barashy, centered mainly on the extortion of three individuals in the United States and two criminal associates (Hai Waknine and Assaf Waknine) (collectively, the "RICO Extortion Counts");

(2) a separate RICO conspiracy count (count 3) and Violent Crime in the Aid of Racketeering ("VICAR") murder-related counts (counts 4–6) against I. Abergil, Malul and Sandoval for conspiring to traffic narcotics and murder, and the murder of Sami Atias, an Ecstacy[1] dealer, that occurred in and around Encino, California on or about August 31, 2003 (collectively, the "RICO Murder Counts");

(3) Ecstacy importation and distribution charges (counts 7 & 8) against I. Abergil and Ozifa based on shipments of Ecstacy from Belgium to the United States that occurred in December 2003 that were part of I. Abergil's large international drug trafficking organization that included shipments of narcotics from Japan, Belgium and elsewhere (collectively, the "MDMA Trafficking Counts").

On or about January 12, 2011, based on the government's extradition request to Israel, I. Abergil, M. Abergil, Barashy, Malul, and Ozifa (collectively, "defendants") were extradited from Israel to the United States. During two and a half years of extradition proceedings in Israel, the government produced 5,000 pages of materials related to the evidence to support the counts in the indictment. Ultimately, the Jerusalem District Court and the Israeli Supreme Court approved the extradition of defendants. On January 13, 2011, the five defendants attended a post-indictment arraignment. Each defendant was detained. El-Al and Sandoval are fugitives.

On May 2, 2011, I. Abergil filed the instant motion for disclosure of the evidence and witnesses to be used in the government's case-in-chief and to identify *Brady/Giglio* material. On May 18, 2011, the government filed an opposition to the motion. On June 7, 2011 and June 9, 2011, respectively, Malul and Ozifa joined in I. Abergil's motion. After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

---

[1] "Ecstacy" or "MDMA" is 3, 4-methylenedioxymethamphetamine, a schedule I controlled substance.

## II. DISCUSSION

### A. Rule 12(b) Notice of Rule 16 Evidence

Defendant moves, pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, for the disclosure of an itemization of the Rule 16 evidence that the government intends to use in its case-in-chief. Mot. at 5–9. Rule 12 provides, in relevant part, that "the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16." Fed. R. Crim. P. 12(b)(4)(B). Rule 16, in turn, grants criminal defendants discovery of, *inter alia*, books, papers, documents, data, photographs, and tangible objects that are "within the government's possession, custody, or control" and are "material to preparing the defense," or that "the government intends to use . . . in its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(E).

Defendant acknowledges that there is no reason to believe that the government is not fulfilling its duty to produce documents. Id. at 6. Indeed, the government has already produced to defendant voluminous discovery, along with hundreds of pages of detailed indices of the discovery and hundreds of pages of detailed summaries of the government's evidence and trial witnesses for each count of the indictment. See, e.g., Exhs. 19, 23–25, and 40. Instead, overwhelmed by the amount of documents produced, defendant seeks to compel the government to isolate those documents that are relevant and may be offered at trial. Mot. at 6. As such, defendant argues that Rule 12 requires the government to specifically identify (as opposed to produce and describe in an index) each piece of evidence that it intends to use in its case-in-chief, and how it relates to the allegations and to which defendant it is alleged to apply. Id. at ii, 6–8 (citing United States v. Turkish, 458 F. Supp. 874, 882 (S.D.N.Y. 1978); United States v. Poindexter, 727 F. Supp. 1470, 1484 (D.D.C. 1989); United States v. Anderson, 416 F. Supp. 2d 110, 113 (D.D.C. 2006); United States v. Upton, 856 F. Supp. 727, 747 (E.D.N.Y. 1994)). In addition, defendant requests that the government segregate the evidence according to the charges to which it relates and state the grounds for its admissibility. Id. at 9.

The government responds by pointing out that it has already produced to defendant detailed indices of the discovery, along with summaries of the government's evidence and trial witnesses for each count of the indictment. Opp'n at 1. Moreover, the government argues that the letters enclosing the discovery to defense counsel often describe the discovery and their relevance to defendants or the charges. Id. at 2, 7 (citing Exhs., 9, 11–15, 17–19, 23–25, 43–47). In short, the government maintains that the roadmap of the evidence that it intends to present in its case-in-chief is already part of the discovery and has been specifically identified.

Id. at 2. Moreover, the government argues that because it is still in the process of translating certain materials from other languages into English, it cannot yet identify all the material it will use in its case-in-chief. Id. at 9.

In addition, the Court has adopted the government's proposed trifurcated trial schedule, whereby the MDMA Trafficking Counts would be tried first, followed by the RICO Murder Counts, then the RICO Extortion Counts. Id. at 3–4. The trial scheulde includes detailed cutoff dates for the government to provide defendant with indices of evidence, disclosure of witnesses, specific types of evidence, motions hearings, and a trial date.[2]

The Court recognizes that the government cannot satisfy its obligation under Rule 12(b) by simply "burying the defendant in paper." Turkish, 458 F. Supp. at 882. Rather, the government must identify with some specificity the evidence it intends to use in its case-in-chief. See Poindexter, 727 F. Supp. at 1484; Anderson, 416 F. Supp. 2d at 112–13. The Court finds, however, that the indices and summaries of the evidence provided by the government, along with the detailed scheduling proposal providing dates for the identification and disclosure of evidence for each trial, is sufficient to satisfy the government's Rule 12(b)(4)(B) obligation.

---

[2] For example, the schedule for the MDMA Trafficking Counts provides:

- Indices of discovery to defendants: June 13, 2011
- First disclosure of known witnesses: July 5, 2011
- Identification of telephone calls for trial (with draft transcripts or detailed summaries), 404(b) evidence, disclosure of experts, second disclosure of previously undisclosed witnesses, and Jencks material: October 4, 2011
- Defendants' reciprocal discovery: October 18, 2011
- Motions due (including motions in limine: November 8, 2011
- Oppositions to motions: November 23, 2011
- Replies to oppositions: November 30, 2011
- Hearings on motions: December 12, 2011
- Defendants' witness list: December 28, 2011
- Trial date: January 31, 2012

Mot. at 3–4. The Court has adopted similar schedules for the RICO Murder Counts and RICO Extortion Counts. Id. at 4.

B.  **Government's *Brady/Giglio* Obligation**

Defendant argues that in a "large documents" case such as this one, "the prosecution has the duty to affirmatively scour those records of the agencies considered the 'government' for purposes of the criminal case in order to determine and acquire those materials which would be considered Brady exculpatory and Giglio impeaching." Mot. at 15–16 (quoting United States v. Salyer, Cr. No. S-10-0061 LKK (GGH), 2010 WL 3036444, at *3 (E.D. Cal. Aug. 2, 2010)). Defendant argues that the government must provide the documents and other Rule 16 Brady/Giglio materials in a form that enables defendant to prepare his defense, engage in meaningful pre-trial motion practice, and avoid unfair surprise at trial. Id. at 18. Accordingly, defendant requests that the government provide this information "in a manner and format that is useable to the defense." Id. at 19.

The Court finds that, at this stage, there is no basis to conclude that the government is not meeting its obligations under Brady and Giglio. The Fifth Circuit's decision in United States v. Skilling, 554 F.3d 529, 576–77 (5th Cir. 2009), aff'd in part, rvs'd in part, Skilling v. United States, --- U.S. ----. 130 S.Ct. 2896 (June 24, 2010) is instructive. In Skilling, the Fifth Circuit began by noting that whether a voluminous open file can itself violate Brady "seem[s] to turn on what the government does in addition to allowing access to a voluminous open file." Id. at 577. There, the government "did much more than drop several hundred million pages on Skilling's doorstep." Id. Rather, the government provided Skilling with a file that was electronic and searchable, turned over a set of "hot documents," and gave Skilling access to databases concerning prior Enron litigation. Id. The court concluded that "considering the additional steps the government took beyond merely providing Skilling with the open file, the equal access that Skilling and the government had to the open file, the complexity of Skilling's case, and the absence of evidence that the government used the open file to hide potentially exculpatory evidence or otherwise acted in bad faith, . . . the government's use of the open file did not violate Brady." Id.

Here, as in Skilling, the government has taken additional steps "beyond merely providing [defendant] with the open file." Skilling, 554 F.3d at 77. To facilitate review of the evidence, the government has provided defendant with detailed indices, along with summaries of the government's evidence and trial witnesses for each count of the indictment. Moreover, defendant has not alleged that the government has attempted to hide potentially exculpatory evidence or acted in bad faith. The court's decision in Salyer does not compel a different result. In Salyer,"the real problem" was that the government argued it had met its disclosure obligation "by turning over a mountain of 'everything' acquired over half a decade, and telling defense counsel nothing about where exculpatory/impeaching information can be found."

Salyer, 2010 WL 3036444, at *6. Here, by contrast, the government has not simply dumped a "mountain of 'everything'" on defendant, and has attempted to inform defendant "where exculpatory/impeaching information can be found." Id.[3]

###    C.    Disclosure of the Government's Witness List

Defendant moves, pursuant to the Court's inherent authority, for an order immediately disclosing the names of all witnesses that the government intends to call in its case-in-chief. Mot. at 10–14.

The Court has discretion to order the government to disclose its non-expert witnesses in advance of trial. See United States v. W.R. Grace, 526 F.3d 499, 510–11 (9th Cir. 2008) (en banc). The Court concludes, however, that defendant's request to immediately disclose the names of all witnesses is premature and would place certain witnesses in peril. First, the government represents that it has not yet decided on all of its trial witnesses. Opp'n at 9. In light of the trifurcated trial schedule – whereby trial on the MDMA Trafficking Counts commences January 31, 2012, trial on the RICO Murder Counts commences April 24, 2012, and trial on the RICO Extortion Counts commences July 31, 2010 – it is not surprising that the government has not yet selected all of its witnesses. Furthermore, the trial schedule provides for the disclosure of the government witnesses in two phases for each trial. During the first phase, the government will disclose known witnesses who do not possess security issues. During the second phase, the government will identify witnesses posing security issues and previously unknown witnesses. Under this schedule, the government is obligated to disclose all of its witnesses several months in advance of trial. See Opp'n at 3–4. The phased approach to witness disclosure is necessary because the government alleges that certain witnesses and informants may be in danger due to defendants' history of violence and network of criminal associates who have been known to engage in violence and retaliation. Id. at 10 (citing Exh. 43 at ¶¶ 3, 11, 15, 96–100). Accordingly, the Court finds that the phased witness disclosure provided in the trial schedule adequately balances defendants' need to prepare for trial with the safety concerns of cooperating witnesses.

---

[3] In addition, the Court notes that the government has agreed to early disclosure of Jencks statements and other materials. See Opp'n at 15.

## III. CONCLUSION

In accordance with the foregoing, the Court hereby DENIES without prejudice defendants' motion for disclosure of the evidence and witnesses to be used in the government's case-in-chief and to identify Brady/Giglio material.

IT IS SO ORDERED.

|  | 00 | : | 20 |
|---|---|---|---|
| Initials of Deputy Clerk |  | IM |  |