UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| | | |
|---|---|---|
| Case No. | CR 08-1033 CAS | Date: February 29, 2012 |
| Present: The Honorable | CHRISTINA A. SNYDER, United States District Judge | |
| Interpreter | Not Applicable | |

| Catherine M. Jeang | Not Reported | Mark Childs<br>Benjamin R. Barron<br>Mark Aveis<br>Nicholas A. Pilgrim<br>(Not Present) |
|---|---|---|
| Deputy Clerk | Court Reporter/Recorder | Assistant U.S. Attorney |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| 1) ITZHAK ABERGIL | Not | X | | 1) Mark J. Werksman<br>1) Melissa A. Weinberger | Not | | X |
| 5) MOSHE MALUL | Not | X | | 5) Donald B. Marks | Not | | X |

Proceedings:  **(In Chambers:) DEFENDANT MOSHE MALUL'S MOTION TO DISMISS INDICTMENT** (filed 10/24/2011)

**DEFENDANT ITZHAK ABERGIL'S MOTION TO DISMISS INDICTMENT** (filed 12/21/2011)

## I.    INTRODUCTION

On or about July 23, 2008, a federal grand jury returned a thirty-two count indictment against seven defendants: Itzhak Abergil ("Abergil"), Meir Abergil ("M. Abergil"), Sasson Barashy ("Barashy"), Yoram El-Al ("El-Al"), Moshe Malul ("Malul"), Israel Ozifa ("Ozifa"), and Luis Sandoval ("Sandoval").  The case has been severed and bifurcated into three separate trials in accordance with the following:

(1) a RICO conspiracy count (count one) and related extortion (counts two and nine through twelve) and money laundering counts (counts thirteen through thirty-two) against Abergil, M. Abergil and Barashy, centered mainly on the alleged extortion of three individuals in the United States and two criminal associates (Hai Waknine and Assaf Waknine) (collectively, the "RICO Extortion Counts");

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

(2) a separate RICO conspiracy count (count three) and Violent Crime in the Aid of Racketeering ("VICAR") murder-related counts (counts four through six) against Abergil, Malul and Sandoval for conspiring to traffic narcotics and murder and the murder of Sami Atias, an Ecstacy[1] dealer, that occurred in and around Encino, California, on or about August 31, 2003 (collectively, the "RICO Murder Counts");

(3) Ecstacy importation and distribution charges (counts seven and eight) against Abergil and Ozifa based on alleged shipments of Ecstacy from Belgium to the United States that occurred in December 2003 that were part of Abergil's alleged international drug trafficking organization whch allegedly trafficked shipments of narcotics from Japan, Belgium and elsewhere (collectively, the "MDMA Trafficking Counts").

On October 24, 2011, Malul, who is charged in the RICO Murder Counts (counts three through six), filed a motion to dismiss the indictment as to him for lack of jurisdiction. Dkt. No. 162. Abergil filed a notice of joinder in Malul's motion and separate motion to dismiss on December 21, 2011, seeking to dismiss counts one and three through six as to him.[2] Dkt. No. 177. Both motions are based on the doctrines of "dual criminality" and "specialty." The government filed a consolidated opposition to both motions on January 6, 2012. Dkt. No. 179. Both defendants filed their respective replies on February 2, 2012. Defendants' motions are currently before the Court.

## II.    BACKGROUND

In August 2008, the United States requested that State of Israel extradite Malul and Abergil on the RICO Murder Counts (counts three through six) and Abergil on the RICO conspiracy count (count one).[3] On July 28, 2009, the Jerusalem District Court ("JDC") issued a lengthy opinion approving the extradition of Malul and Abergil on these counts with one limitation. See Opp'n, Exh. 1 (copy of JDC ruling). Specifically, after exhaustively analyzing Israel's and the United States' racketeering laws and concluding Israel did not enact a RICO equivalent until June 17, 2003, the JDC, in full pertinent part, concluded:

---

[1] "Ecstacy" or "MDMA" is 3, 4-methylenedioxymethamphetamine, a schedule I controlled substance.

[2] The Court herein refers to counts one and three through six as the "Disputed Counts."

[3] Abergil was also extradited on additional counts not relevant for purposes of the present motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

> First, as a result of my above-mentioned conclusion concerning all allegations dealing with conspiracy or violence and/or aiding violence in association with a crime organization that supposedly were perpetrated before [June 17, 2003, when Israel's Organized Crime Control Act was enacted], this clarifies that [Malul and Abergil] should not be extradited to the United States under these allegations and they are not to stand trial under these allegations as per the American RICO Act. On the other hand, they may be extradited and stand trial according to the Organized Crime Control Act for acts supposedly perpetrated following [June 17, 2003]. Since [June 17, 2003] is only relevant to the allegations as per the American Organized Crime Control Act, which clarifies that pertaining to the other allegations and per other American laws in the indictment, [Malul and Abergil] are to be extradited to the United States and should stand trial, whether they supposedly perpetrated the crimes the day before [June 17, 2003] or following it.

Id. at 229.

In other words, the JDC concluded that under the principles of "dual criminality," Abergil and Malul may be convicted of the RICO and VICAR counts based only on acts committed post-June 17, 2003, because Israel's RICO equivalent, the Organized Crime Control Act, was not enacted until June 17, 2003.[4] Id.

Defendants appealed the JDC Ruling to the Supreme Court of Israel ("ISC") and contended that they should not be extradited for at least two reasons. First, Abergil (and defendant Barashy) argued, inter alia, that no dual criminality exists between RICO and Israel's parallel law. Id., Exh. 2 at 258, 354. Second, Malul argued, inter alia, that his extradition should be denied because evidence of the motive for the RICO Murder Counts—namely, the victim Atias' attempt to steal Malul's Ecstasy in 2002—could not be introduced at Malul's trial because the government had not sought his extradition "on account of his involvement in drug trafficking" and, thus, his extradition would violate the rule of specialty. Id. at 355. On December 6, 2010, the ISC issued a 140-page extradition decision, affirming in part and overruling in part the findings and decisions of the JDC, and rejecting the arguments set forth by Abergil and Malul on appeal. Id., Exh. 2 ("ISC Ruling"). Specifically, after observing that defendants were accused of "the crimes of conspiring to be involved in activities" under RICO and "violent crimes in aid of racketeering activity" under VICAR, the ISC concluded that it

---

[4] The doctrine of "dual criminality" requires that the accused be extradited only if the alleged criminal conduct is criminal under both the surrendering and requesting nation. See discussion infra, Section III.A.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

"did not find anything in the claims of Abergil and Malul that might justify our intervention in the conclusion reached by the [JDC] that a grounding exists for the indictment against [Abergil and Malul] on account of their alleged involvement in the murder of Atias [i.e., the RICO Murder Counts]. The appeals regarding [Abergil and Malul's arguments] are therefore rejected." Id. at 237, 368.

On December 28, 2010, following issuance of the final, unappealable order by the ISC, Israeli Minister of Justice Yaakov Neeman signed the extradition order that required Malul and Abergil to be extradited to the United States. Id., Exh. 3 at 375, 378 (copy of extradition order). The extradition order clearly and unambiguously authorizes the extradition of Abergil on the Disputed Counts, and Malul on the RICO Murder Counts, subject to the June 17, 2003, restriction as set forth above. Specifically, the extradition order provides the following:

> . . .[T]he Wanted are extraditable to the United States on the Crimes attributed to them as set forth below:
>
> A. **Yitzhak Abergil**[5]
>    - On indictments [i.e. counts] 1 and 3, conspiracy to engage in racketeering activity, under United States Federal law—Title 18 United States Code (USC [sic]) section 1692(d); Racketeer Influenced and Corrupt Organization Act (1994). . . .
>    - On indictment 4, conspiracy to commit murder as part of racketeering activity, under United States Federal law—Title 18 United States Code (USC) section 1959(a)(5);
>    - On indictment 5, attempted murder and aid in attempted murder as part of racketeering activity, under United States Federal law—Title 18 United States Code (USC) section 1959(a)(5) and (2);
>    - On indictment 6, murder and aid in murder as part of racketeering activity, under United States federal law—Title 18 United States Code (USC), section 1959(a)(1) and (2);
>
> . . . .
>
> D. **Moshe Malul**
>    - On indictment 3, conspiracy to engage in racketeering activity, under United States Federal law—Title 18 United States Code (USC) section 1962(d);

---

[5] Abergil's given name is spelled differently at various points, including Itzhak, Yitzhak, and Yitzchak.

- On indictment 4, conspiracy to commit murder as part of racketeering activity, under United States Federal law—Title 18 United States Code (USC) section 1959(a)(5);
- On indictment 5, attempted murder and aid in attempted murder as part of racketeering activity, under United States Federal law—Title 18 United States Code (USC) section 1959(a)(5) and (2);
- On indictment 6, murder and aid in murder as part of racketeering activity, under United States federal law—Title 18 United States Code (USC), section 1959(a)(1) and (2);

. . . .

And subject to the following restrictions concerning the cases below:

A. **Yitzchak Abergil**—In the case of the extortion of Viken Keuylian [count one], and the case of the murder of Sammy Atias [counts three through six]—for crimes committed after the 17th of Sivan, 5763 (June 17, 2003) (herein: **"the Determining Date"** only). . . .

C. **Moshe Malul**—for the murder of Sammy Atias—for crimes committed after the determining date.

Id. at 375, 378 (emphasis in original).

Accordingly, on January 12, 2011, Abergil and Malul were extradited from Israel to the United States to stand trial in this case.

## III. DISCUSSION

The crux of Abergil and Malul's motions is that the Disputed Counts of the indictment violate the laws governing extradition because the indictment fails to satisfy either the dual criminality requirement or the rule of specialty. The Court will address each doctrine generally and then apply them to the present case.

### A. The Doctrines of Dual Criminality and Specialty

"Dual criminality requires that an accused be extradited only if the alleged criminal conduct is considered criminal under the laws of both the surrendering and requesting nations." United States v. Anderson, 472 F.3d 662, 670 (9th Cir. 2006) (internal quotation marks and citations omitted); see also Oen Yin-Choy v. Robinson, 858 F.2d 1400, 1404 (9th Cir. 1988) ("[N]o offense is extraditable unless it describes conduct which is criminal in both jurisdictions."). The offenses need not be labeled the same, or have the same scope of liability,

elements or stated purpose in each country; rather, "[i]t is enough that the conduct involved is criminal in both countries." Matter of Extradition of Russell, 789 F.2d 801, 803 (9th Cir. 1986).[6] If a court determines that the same conduct is subject to criminal sanctions in Israel and the United States, it need not inquire further. See United States v. Saccocia, 58 F.3d 754, 766 (1st Cir. 1995); Demjanjuk v. Petrovsky, 776 F.2d 571, 579–80 (6th Cir. 1985) cert. denied, 475 U.S. 1016 (1986) ("If the acts upon which the charges of the requesting country are based are also proscribed by law of the requested nation, the requirement of double criminality is satisfied."). A court must give deference to a surrendering sovereign's reasonable determination that the offense in question is extraditable. See United States v. Van Cauwenberghe, 827 F.2d 424, 429 (9th Cir. 1987) (holding that "proper deference" must be afforded to a surrendering country's decision as to whether a particular offense satisfies dual criminality); Case v. Dept. of State, 980 F.2d 1472, 1477 (D.C. Cir. 1992) ("[A]n American court must give great deference to the determination of the foreign court in an extradition proceeding.").

The rule of specialty—"a corollary to the principle of dual criminality," see Saccoccia, 58 F.3d at 766—forbids a court from trying an extradited defendant "other than for the crimes for which he has been extradited." Anderson, 472 F.3d at 671. The doctrine is based on principles of international comity and is designed to guarantee the surrendering nation that the extradited defendant will not be subjected to indiscriminate prosecution by the requesting nation. United States v. Najohn, 785 F.2d 1420, 1422 (9th Cir. 1986). "[T]he inquiry into specialty boils down to whether, under the totality of the circumstances, the court in the requesting state reasonably believes that prosecuting the defendant on particular charges contradicts the surrendering state's manifested intentions . . . ."); Saccoccia, 58 F.3d at 767; United States v. Andonian, 29 F.3d 1432, 1435 (9th Cir. 1994). "An extradited person may raise whatever objections the extraditing country is entitled to raise." Andonian, 29 F.3d at 1435 (citing United States v. Cuevas, 847 F.2d 1417, 1426 (9th Cir. 1988)).

Because "[e]xtradition is the means by which a requesting country obtains a limited form of personal jurisdiction over a defendant," any violation of dual criminality or the rule of specialty deprives the court of personal jurisdiction over the extradited defendant. Anderson, 472 F.3d at 671, n.3.

---

[6] Relevant to this case, the doctrine of dual criminality is incorporated in Article II of the protocol amending the extradition treaty between the United States and Israel. Mot., Exh. C.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

### B. Application to the Present Indictment

Defendants[7] argue that the Disputed Counts should be dismissed in their entirety or, alternatively, the offending overt acts should be redacted as violative of the dual criminality and specialty doctrines.

As to dual criminality, defendants point to language from the ISC ruling where the court found that "the requirement of dual criminality does not exist from the aspect of the timing of the crime in all that is related to the accusations of the crimes of conspiring to engage in racketeering, committing violent crimes in aid of racketeering activity and aiding in the commission of violent crimes in aid of racketeering activity which were committed before the determining date [June 17, 2003]." Malul Mot. at 14 (quoting ISC Ruling at 16). According to defendants, because the ISC ruled that no dual criminality existed prior to June 17, 2003, they "could not have been extradited for conduct committed" before that time. Abergil Mot. at 6. Further, Malul argues that ISC's language limiting Malul's extradition to "the case of the murder of Atias" unequivocally demonstrates ISC's intent not to extradite him on the RICO counts. Malul Mot. at 18.

As to specialty, defendants argue that "Israel did not agree to extradite [defendants] for the RICO and VICAR offenses" because "RICO and VICAR did not exist under the laws of Israel . . . until Israel passed its Organized Crime Law on June 17, 2003." Malul Mot. at 21. Thus, defendants maintain that "only racketeering activity alleged to have [occurred] on or subsequent to June 17, 2003, could legally form the basis for [defendants'] extradition." Id. Because the first 104 overt acts in count one and the first 13 overt acts in the RICO Murder Counts refer to pre-June 17, 2003, activities, defendants urge the Court to either dismiss those counts or redact the offending overt acts. Id. at 14.

In opposition, the government argues that the JDC and ISC's unequivocal finding of dual criminality on the Disputed Counts should be afforded "substantial deference." Opp'n at 12. As to the doctrine of specialty, the government argues that "the plain language of the controlling Extradition Order shows that defendants Malul and Abergil may be prosecuted here for the exact charges that they now claim exceed that order." Id. at 15. Further, the government asserts that the overt acts that occurred prior to June 17, 2003, need not be redacted because "defendants have incorrectly conflated the charges on which extradition has been approved with the scope of permissible proof of those charges." Id. at 16. Although the government acknowledges the defendants cannot be "convicted" on the RICO and VICAR

---

[7] "Defendants" refer to Abergil and Malul, the moving parties herein.

counts based on acts committed prior to June 17, 2003, "an offense which itself is not extraditable may serve as [] an overt act or a predicate act in connection with another extraditable offense, such as RICO conspiracy." Id. at 17–18 (citing Saccoccia, 58 F.3d at 768 and United States v. Moss, 344 F. Supp. 2d 1142 (W.D. Tenn. 2004)). Thus, according to the government, it may introduce relevant evidence of acts committed prior to June 17, 2003, because "no rule of extradition has any effect on the admissibility of evidence to prove charges on which an individual has been extradited." Id. at 19. Finally, the government contends that the rule of specialty is also satisfied because "Israel clearly intended to extradite defendants Malul and Abergil for counts three through six as well as the racketeering activity that are part of those counts." Id. at 22 (emphasis omitted).

In reply, defendants argue that "RICO criminalizes structural conduct that is separate and apart from the predicate offenses," meaning the ISC "was prohibiting [introduction of] the overt acts which form the substance of the RICO conspiracy." Abergil Reply at 9 (quoting United States v. Luong, 393 F.3d 913, 915 (9th Cir. 2004)). Defendants therefore contend that "any overt act, or charge of an illicit agreement to conduct racketeering activity prior to June 17, 2003, is disallowed in the charging indictment." Id. According to defendants, the government's argument that it is prosecuting defendants "only for the *counts* that [they were] extradited on . . . ignores the explicit prohibition that [defendants] not be convicted of pre-June 17, 2003 *acts*." Id. at 12–13 (emphasis in original). Thus, defendants maintain that if the offending counts are not dismissed or the overt acts not redacted, "there is a danger that [defendants] will be convicted of RICO conspiracy based on pre-June 17, 2003 acts." Id. at 13. Finally, defendants argue that the "only relevant question for purposes of this motion is whether the government can continue to charge [defendants] with a RICO conspiracy that begins prior to June 17, 2003, and whether overt acts alleged before that date can be charged" in the indictment, and not whether the government may introduce pre-June 17, 2003, conduct for some other evidentiary purpose. Id. at 17.

As an initial matter, the Court finds that the doctrine of dual criminality is satisfied. After an exhaustive analysis of the racketeering laws in the United States and Israel, the JDC concluded that "dual criminality is applicable" as between the racketeering laws of the United States and Israel. See Opp'n Exh. 1 at 73, 226. The ISC affirmed this finding: "[T]he requirement of double criminality in the aspect of the timing of [the racketeering counts] is maintained." Id. Exh. 2 at 363. See also id. at 245–75, 362–65 ("To conclude this point, we reject the claim regarding the absence of double criminality.").[8] The Court must give

---

[8] The Court rejects Malul's contention that the ISC did not find dual criminality because it authorized extradition "solely" on account of "the case of the murder of Atias." The JDC and

substantial deference to these conclusions, and finds no reason to depart from them here. Van Cauwenberghe, 827 F.2d at 429.[9]

Whether the rule of specialty has been fully complied with, on the other hand, is less clear. The Court begins its analysis by rejecting defendants' contention that the Disputed Counts should be dismissed in their entirety. As discussed above, the extradition order unambiguously authorizes Malul and Abergil's extradition on the basis of the Disputed Counts. "In general, we do not believe that there can be a violation of the principle of specialty where the requesting nation prosecutes the returned fugitive for the exact crimes on which the surrendering nation granted extradition." Saccoccia, 58 F.3d at 768. Here, the government has limited the indictment to the crimes expressly authorized in the extradition order. See Opp'n Exh. C. Accordingly, taken at face value, the government has not violated the rule of specialty by charging Malul and Abergil with the Disputed Counts.

The next inquiry is whether any *portions* of the Disputed Counts offend the rule of specialty. To answer that, the Court must examine the elements of RICO and VICAR and determine whether anything in the indictment runs afoul of the extradition order's temporal limitation. RICO makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). This "pattern of racketeering activity" requires "at least two acts of racketeering activity" listed among the federal and state offenses listed in § 1961(1). See id. § 1961(5). "The government may prosecute a RICO conspiracy and a predicate act successively." United States v. Luong, 393 F.3d 913, 915 (9th Cir. 2004). This is because

---

ISC clearly understood that the RICO Murder Counts, culminating in the murder of Atias, included conspiratorial and racketeering conduct prior to the actual murder. The courts simply labeled that sequence of events the "case of the murder of Atias." Moreover, any ambiguity in the courts' statements was cured by the extradition order, which unequivocally authorized defendants' extradition on the Disputed Counts subject to the June 17, 2003, limitation.

[9] The June 17, 2003, limitation placed on the racketeering counts by the JDC and ISC does not alter the fact that both courts found the requirement of dual criminality to be satisfied. If a court determines that the same conduct is subject to criminal sanctions in Israel and the United States, it need not inquire further. See Saccocia, 58 F.3d at 766; Petrovsky, 776 F.2d at 579–80 ("If the acts upon which the charges of the requesting country are based are also proscribed by law of the requested nation, the requirement of double criminality is satisfied."). The temporal limitation is more properly addressed with regard to specialty.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

"RICO criminalizes structural conduct that is separate and apart from predicate offenses." Id. at 917.[10] In this case, the government asserts six predicate "acts of racketeering activity" as to count one and seven predicate offenses as to counts three through six. See Indictment at 10, 41. As required by RICO and VICAR, the government supports the predicate offenses with specific overt acts. However, many of these overt acts occurred prior to June 17, 2003. In count one, for example, the first 104 overt acts (out of 161 total) occurred prior to June 17, 2003. The same is true of the first 13 overt acts (out of 38 total) of the RICO Murder Counts. Because certain of those overt acts provide the substance for the RICO and VICAR predicates, see Luong, 393 F.3d at 915, they appear to be barred by the extradition order.

In light of the foregoing, the Court finds it appropriate for the government to redact the offending provisions from the indictment. Courts have approved this prophylactic measure as an alternative to dismissing the counts outright. See Saccoccia, 58 F.3d at 768 ("[T]he prosecution avoided any potential intrusion on the principles of either dual criminality or specialty by [redacting] . . . all references to [non-extraditable] offenses . . . These precautions purged any taint, and knocked the legs out from under the line of reasoning that appellant seeks to pursue."). See also United States v. Valencia-Trujillo, Case No. 8:02-CR-329-T-17EAJ at 6 (M.D. Fla. Sept. 12, 2005) ("Redacting predicate acts 1–26 in Count III of the indictment is sufficient to uphold the doctrine of specialty by eliminating any doubt regarding the specific crimes charged or for which [d]efendant faces prosecution.") aff'd on other grounds, 573 F.3d 1171 (11th Cir. 2009), cert. denied 130 S.Ct. 1726 (2010); United States v. Gallo-Chamorro, 48 F.3d 502, 504 (11th Cir. 1995) (observing that the district court redacted the portion of the indictment referring to prohibited aiding and abetting charges in order to comply with specialty doctrine).[11] Accordingly, the Court finds that the government should redact overt acts 1–104

---

[10] Similarly, a violation of VICAR requires the government to prove beyond a reasonable doubt that the organization with which defendants were involved was a RICO enterprise, that the enterprise was engaged in racketeering activity as defined in RICO, that defendants held a position in enterprise, that defendants committed alleged crime of violence, and that their general purpose in doing so was to maintain or increase his position in enterprise. See 18 U.S.C. § 1959; United States v. Concepcion, 983 F.2d 369, 381 (2d Cir. 1992) cert. denied 510 U.S. 856; United States v. Vasquez-Velasco, 15 F.3d 833, 842 (9th Cir. 1994).

[11] The Court does not suggest that the Disputed Counts cannot stand if all overt acts prior to June 17, 2003, are redacted. In count one, for example, overt acts 105, 109, 111, 119, 134, 139, 152, 155, 158, and 160 occurred after June 17, 2003, and are probative of at least three predicate offenses pursuant to 18 U.S.C. § 894 (collection of extensions of credit by extortionate means), § 1951 (interference with commerce by threats of violence), and § 1952(a)

with regards to count one and overt acts 1–13 with regards to the RICO Murder Counts.[12]

The Court does not resolve whether the redacted information will be admissible for any other purpose other than to prove the charged crimes. See Saccoccia, 58 F.3d at 767 (holding that the rule of specialty "has never been construed to permit foreign intrusion into the evidentiary or procedural rules of the requisitioning state . . . "). That question is better left for a motion in limine.

## IV. CONCLUSION

In accordance with the foregoing, defendants' motions to dismiss the indictment are DENIED. The Court finds, however, that it appropriate for the government to redact all overt acts alleged in support of the Disputed Counts that occurred prior to June 17, 2003, pursuant to the Extradition Order.

IT IS SO ORDERED.

|  | : | 00 |
|---|---|---|
|  | Initials of Deputy Clerk | SMOM |

---

(interstate and foreign travel or transportation, or use of a facility in interstate or foreign commerce, in aid of racketeering enterprises). Likewise, as to counts three through six, overt acts 17–22, 28, 34, and 38 occurred after June 17, 2003, and are probative of at least three predicate offenses pursuant to 18 U.S.C. § 1952(a), § 1958(a) (use of interstate and foreign commerce facilities in the commission of murder-for-hire), and 21 U.S.C. § 846 (conspiracy to distribute controlled substances).

[12] Because the rule of specialty is grounded in international comity and not in a defendant's individual rights, it may be waived by Israel per its agreement with the United States. See Def. Abergil Joinder, Exh. C ¶ 1(c) (copy of the "Extradition Protocol" between Israel and United States). The Court's present ruling does not limit the government's option to seek waiver of the rule of specialty as to the redacted portions of the indictment.